573 A.2d 1101

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Willie Lee DAVIS, Sr., Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 5, 1990.

Filed April 19, 1990.

Francis M. Socha, Harrisburg, for appellant.

Richard A. Lewis, Dist. Atty., Harrisburg, for Com., appellee.

Before KELLY, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This case involves an appeal from the denial of the Post Conviction Relief Act (PCRA)[1] petition of the appellant, Willie Lee Davis, Sr. We affirm.

The facts of record indicate that on July 12, 1987, the appellant, Bobbie Jones and Ronald Moore resided on the second floor of a boarding house located at 1217 North Cameron Street, Harrisburg, Pennsylvania.

At approximately 11:00 a.m. on the date stated, the appellant and Mr. Jones became embroiled in an argument over the appellant's failure to leave the bathroom door open so that other tenants could tell whether the facilities were being used. This exchange of words prompted Jones to walk the length of the hallway and telephone the police. The appellant fired a .25 caliber handgun at Jones. A bullet entered one side of Jones' neck and exited the other side. This shooting was witnessed by Mr. Moore as he stood in the entrance way to his apartment located across from the telephone.

To evade the appellant, the victim ran to the third floor and locked himself in one of the apartments only to have the appellant pound on the apartment door demanding that the victim come out. Fearful for his life, the victim took the only available exit, *i.e.*, the window, and fell three stories to the concrete below. Despite incurring fractures of the knee, foot, hip, wrist, elbow and temple, the victim managed to secure a ride to the Hershey Medical Center. He remained there for over a month and was treated for a bullet wound to his neck and the injuries sustained by the fall.

1. See 42 Pa.C.S. § 9541 et seq. (Supp.1989).

Within minutes after the incident, the police arrived on the scene and were informed by Mr. Moore that the appellant had committed the shooting and threatened his life if he told the police. The appellant was arrested and a search of his person produced a .25 caliber handpistol containing five live rounds. An examination of the second floor hallway produced a spent shell casing from a .25 caliber automatic revolver.

Following a preliminary hearing,[2] the appellant was arraigned before a Judge Morrison on October 1, 1987. At that time, the assistant district attorney requested that a colloquy be conducted as to the appellant's continuing desire to proceed without counsel given that the appellant had appeared at the preliminary hearing and waived his right to counsel.

The assistant district attorney began the colloquy by reading the charges from the informations. He then informed the appellant of his right to an attorney and to free counsel if he could not afford one. When asked his intentions, the appellant answered: "I still feel I am going to represent myself." Thereafter, the assistant district attorney told the appellant the potential punishment associated with each charge and still the appellant stated that with regard to attorneys: "I don't trust them." Lastly, the assistant district attorney advised the appellant that in representing himself at trial he would be requested to adhere to the same rules of court that a lawyer would have to follow. The appellant acknowledged comprehending what had been stated to him—he had represented himself in three (3) prior trials.

Despite the appellant's refusal to take counsel, the arraignment court designated the public defender's office to be his attorney and aid him in his efforts to prepare for trial and be standby counsel because of the seriousness of the charges. To this the appellant remarked:

2. No transcript appears in the record of this preliminary hearing.

I am making it quite clear that now I am 47 years old. I got to the point I know I am faced with, you know. I feel I am just another Jew in a war camp dated back as far as 1940, it is like I am being persecuted, so whatever punishment I receive from the court, I am a man and I am going to take it. If it is life imprisonment, I am willing to undergo that....

Next, we find that at the December 17, 1987, pre-trial hearing to rule on the appellant's pro se motions for discovery and dismissal of the charges, the appellant stated at the outset: "I don't need no counsel, I am representing myself...."

Nonetheless, standby counsel (a Ms. Konow) wanted it placed on the record that she was "concerned" about the appellant's "competency to stand trial". In other words, albeit the public defender's office was not representing the accused, she was raising the question of competency, i.e., whether the appellant was in a position to make the decision to represent himself.

In an effort to resolve this question, the court asked whether the appellant had been in a hospital for mental illness. The appellant responded that he had been transferred from Western Penitentiary in Pittsburgh, Pennsylvania to Farview in 1970 for eleven (11) months. Since then, the appellant remarked that he had received no mental treatment. Upon further inquiry, the appellant testified that he was convicted of federal charges in 1982, and he was sent to a federal hospital in Springfield, Missouri. He received tests (physical and mental) by a Doctor Conroy, a psychologist. The purpose, as stated by the appellant, was:

They checked me out mentally to see whether or not they had reason for them to commit me. She found no reason.

What ensued was the following discourse:

THE COURT: All right. That is good enough for me. * * * When you talk to me you sound to me to be a man of intelligence and your answers are logical and coherent and I think you are competent.

THE DEFENDANT: I am not as smart as you. I have an eighth grade education but I am not crazy.

THE COURT: I agree with you. I think you are competent.

Again, the court advised the appellant of his right to counsel and that he would be better off with representation because he did not know the procedures to be followed at trial. The appellant rebuffed the offer and said: "... if I show competency now hopefully later they don't come up trying to say well he's crazy." With the preceding remarks in mind, the court stated: "I am satisfied that you know what you are doing. You may be unwise but you are competent."

At the commencement of the January 4–5, 1988, jury trial, the court once again asked whether the appellant desired to proceed pro se. The appellant answered:

... I'm willing to go ahead and be tried. But I don't think an attorney would have an effective chance of presenting my case. So like I said, I would rather go ahead....

The trial court then informed the jury that the appellant was having Attorney Konow sit with him so he could consult with her on anything "and she might advise him purely procedurally."

At the trial, the appellant participated in the selection of the jury, requested of the trial court whether he could "waive the alternate challenge", and made an opening statement. Also, the appellant cross-examined the victim (see N.T. 1/4–5/88 at 28–41), the doctor who treated the victim and the witness to the shooting, the last two of whom did not waver in their identification of the appellant as the person who did the shooting. Further, during his cross-examination of the witness-Moore, the appellant conferred with his standby counsel on two (2) occasions, and he lodged an objection to a question asked by the assistant district attorney. Additionally, the appellant cross-examined the arresting officer, and, at the completion of the direct-examination of the officer who processed him at the police sta-

tion, standby counsel interjected a question of the assistant district attorney to clarify the exhibit number of a vial (which contained bullets) retrieved from the appellant's person. Lastly, the weapon's expert was cross-examined with regard to the testing conducted which concluded that the empty shell casing was fired from the weapon found on the appellant. With this, the Commonwealth rested its case, and the appellant did not take the stand.

In the court's charge to the jury, it made reference to a "concern about the defendant's mental state." The court advised the jurors that they should not be preoccupied with this because no evidence had been presented on this subject. Thus, the jury did not have before it the question of finding the appellant "guilty by reason of insanity" or "guilty but mentally ill."

The court pointed out that from the appellant's questioning of the witnesses and closing argument, his position was that the Commonwealth did not prove its case of the victim being shot by the appellant.

During the course of deliberations, the court was informed that a juror had told his tipstaff that another juror had overheard Mr. Moore (a Commonwealth witness) say something at a bus stop. As a result, the court questioned the particular juror in the presence of the assistant district attorney and Attorney Konow (appellant's standby counsel), and the court was satisfied there was no reason to declare a mistrial on this matter.

Thereafter, the trial court questioned the jury as to what two (2) charges of the three (3) brought against the appellant it had agreed upon, and the court was told aggravated assault and terroristic threats but not attempted murder. To this, standby counsel stated she had no objection to the court declaring a mistrial with respect to the attempted murder charge.

Once the verdicts of guilty for aggravated assault and terroristic threats were read, standby counsel stated the appellant wanted to have the jury polled. This took place.

Next, the appellant was advised of his post-trial rights and his right to free counsel to aid him. "And for the last time", the court stated, "have the lawyer help you." With this, standby counsel inquired whether the assistant district attorney would *nolle pros* the firearm charge. She was told this would take place at sentencing. However, at sentencing, wherein standby counsel appeared with the appellant and asked to have the firearm charge dismissed, the assistant district attorney mentioned that a petition to that effect would be submitted to the court.

Neither post-trial motions nor a direct appeal from the judgment of sentence for aggravated assault and terroristic threats was filed despite the post-trial and sentencing court's informing the appellant of his Pa.R.Crim.P. 1123(c) & 1405(c) rights. Rather, the appellant submitted a PCRA petition on April 25, 1988, alleging, inter alia, that (1) incriminating statements were elicited from him at the preliminary hearing in the absence of counsel; (2) "trial counsel was incompetent ... by not having the ability to represent [him] in the best of his [sic] interests ..."; and (3) consolidating the charges at one trial was impermissible.

The appellant, at his request, was assigned counsel to represent him. Thus, when the appellant filed a hand-written " 'Motion For Withdrawal' of Court Appointed Attorney" and a petition to "Proceed in 'Forma Pauperis' ", they were denied. A supplemental petition under the PCRA was filed by court-appointed counsel. He averred in relevant part that:

(7) Petitioner['s] ... conviction resulted from the denial of the Petitioner's constitutional right to counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilty or innocence could have taken place and in support thereof avers the following:

A. Petitioner contends that the trial court erred in permitting the Petitioner to represent himself without counsel in the instant proceedings ... [H]e did not affirmatively, knowingly, voluntarily or intelligently waive his

right to counsel in the instant proceedings and the trial court erred in permitting the Petitioner to represent himself pro se in the instant proceedings....

B. Petitioner contends that he was prejudiced by the trial court's unsolicited comments made during the court's charge to the jury pertaining to [his] mental health ... because the trial court had injected into the proceedings a consideration pertaining to the mental health of the Petitioner which was inappropriate to the jury's determination of guilt or innocence....

C. The trial court erred in failing to appoint counsel for the Petitioner [to] represent him in post-trial proceedings, and on appeal of the present sentence. Petitioner contends that he did not knowingly, intelligently, or voluntarily waive his right to representation of counsel in any future proceedings after the entry of his guilty plea [sic].

The Commonwealth filed an answer to the supplemental PCRA petition.[3] By opinion and order dated October 26, 1989, the PCRA court denied the appellant the relief requested by holding that his claim that the court erred in permitting self-representation at trial and post-trial proceedings was "vacuous" and not supported by the record. As for the prejudicial effect of informing the jury that it could not find the appellant not guilty by reason of insanity or guilty but mentally ill, the PCRA court wrote:

... We note initially that this issue has been waived since there was no timely objection to the Court's charge to the jury pursuant to Rule 1119(a), Pa.R.Crim.P. Furthermore, it is obvious from the trial transcript that the Court was merely clarifying the issues for the jury. As our appellate courts have noted, the primary duty of a trial judge in charging a jury is to clarify the issues so that the

3. The appellant submitted a 31–page pro se "motion for modification of sentence nunc pro tunc", wherein he, inter alia, (1) challenged the court's ability to judge his "mental condition" at the time the crimes were committed, (2) questioned his sanity, and (3) claimed he was represented by incompetent counsel. This motion was denied by order of court dated February 6, 1989.

jury may understand the questions to be resolved. [Citations omitted].

This timely appeal followed and raises the issues pertaining to the appellant's waiver of counsel and the trial court's remarks during its charge to the jury relating to the appellant's state of mind.

Before reaching the merits of the appellant's allegations, we must ascertain whether the issues proffered have been waived.[4] See *Commonwealth v. Jones,* 477 Pa. 266, 267, 383 A.2d 926, 938 (1978); *Commonwealth v. Porta,* 297 Pa.Super. 298, 302, 443 A.2d 845, 847 (1982). The fact that the question of waiver has not been raised by the Commonwealth or the PCRA court does not foreclose this Court from doing so *sua sponte.* See *Commonwealth v. Flynn,* 295 Pa.Super. 513, 518–21, 442 A.2d 256, 259–60 (1982).

As observed by this Court in discussing the Post–Conviction Hearing Act, the predecessor to the present PCRA, we clarified the area of waiver as it related to one's right to appeal and counsel; to-wit:

> It is axiomatic that in our scheme of justice an accused has the right to appeal his sentence and to the assistance of appointed counsel, if indigent, in doing so. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Concomitantly, the accused has the ability to "waive" his right to counsel and to an appeal. As our Supreme Court capsulized in *Commonwealth v. Norman,* 447 Pa. 217, 285 A.2d 523 (1971):
>
> > In determining whether a defendant has waived a constitutional right it is well settled that the federal standards of waiver first enunciated in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) apply. *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). The waiver of a constitutional

**4.** The fact that we cite cases which deal with the Post–Conviction Hearing Act's waiver concept is of no moment since the same precept has been retained in the present PCRA. See 42 Pa.C.S. § 9544(b) ("Issues waived") (1982) (repealed) and compare with 42 Pa.C.S. § 9544(b) ("Issues waived") (Supp.1989).

right must be "an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023. The presumption must always be against the waiver of a constitutional right. *Glasser v. United States*, 315 U.S. 60, 70–71, 62 S.Ct. 457, 463–465, 86 L.Ed. 680 (1942). Nor can waiver be presumed in a silent record case. The United States Supreme Court explicitly ruled in *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962):

> "*Presuming waiver from a silent record is impermissible.* The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (Emphasis added).

Id. at 516, 82 S.Ct. at 890. Thus, this Court is constitutionally bound to place the burden of proving waiver on the Commonwealth. Whether defendant was represented by private or court-appointed counsel, or whether his trial took place before or after the *Douglas* decision, are distinctions with no legal significance. *Commonwealth v. Ezell*, [431 Pa. 101, 244 A.2d 646 (1968)]; *Commonwealth ex rel. Stevens v. Myers*, [419 Pa. 1, 213 A.2d 613 (1965)].

477 Pa. at 221–222, 285 A.2d at 526. * * * Furthermore, the Commonwealth's burden of proving waiver of one's appellate rights by a preponderance of the evidence, in silent record cases, has been settled law in this jurisdiction since 1968. *Commonwealth v. Wilson*, 430 Pa. 1, 241 A.2d 760 (1968).

\* \* \* \* \* \*

With the preceding precepts in mind, we now turn to the record and find a total absence of any mention of the appellant's *Douglas* rights. Not only does a *Douglas* denial preclude a finding of waiver under Section 4 of the PCHA, *Commonwealth v. Holmes*, 468 Pa. 409, 417 n. 7, 364 A.2d 259, 263 n. 7 (1976), but this requirement cannot be inferred from the appellant's possession of a prior

criminal record. *Commonwealth ex rel. Mullins v. Maroney*, 428 Pa. 195, 200–201, 236 A.2d 781, 785 (1968); *Commonwealth ex rel. Gordon v. Myers*, 424 Pa. 352, 354, 227 A.2d 640, 642 (1967).

\* \* \* \* \* \*

Instantly, the 1967 guilty plea colloquy makes no mention of the rights referred to in *Douglas*,[2] nor was the appellant tentative ... in his reaffirmation of the denial of his right to appeal ... during his testimony at the 1983 PCHA hearing. Therefore, we fail to detect what facts of record are supportive of the PCHA ruling [finding of waiver.]

[2] Presently, in Pennsylvania, Pa.R.Crim.P. 1405(c)(1) deals with one's appellate rights as enunciated in *Douglas*.

*Commonwealth v. Berthesi*, 350 Pa.Super. 383, 386–391 & n. 2, 504 A.2d 891, 893–895 & n. 2 (1986), allocatur denied 10/7/86.

Moreover, as stated by the Supreme Court of Pennsylvania on the subject at hand,

... the trial court, the Commonwealth or trial counsel should place on record, perhaps immediately after sentence is imposed, a full examination of the accused sufficient to demonstrate that he is aware of his right of appeal and his right to counsel for that purpose, and that he understands the full import of these rights as well as the consequences which may flow from their exercise.

*Commonwealth v. Wilson*, 430 Pa. 1, 6, 241 A.2d 760, 763 (1968) (Footnote omitted). In the instant case, we have the transcript of the sentencing phase of the case. At that time, the appellant was advised by the assistant district attorney of the following:

MR. SMITH [Assistant District Attorney]: Mr. Davis, you have been sentenced by the Court. You have the right within ten days of today's date to file a motion to modify the sentence; and if you wish to raise the legality or the propriety of the sentence that Judge Dowling has just imposed on you at any time in any court, you must first do so in this court by filing a motion to modify

sentence or your right to do so will be forever waived or given up.

You have the right within 30 days of today's date to file an appeal to Superior Court of Pennsylvania. And if you fail to appeal within 30 days of today's date, your right to appeal will be given up forever.

You have been representing yourself in spite of everyone's advice that you accept the representation of counsel. These matters would best be submitted by counsel. You have stand-by counsel, and it is my assumption that stand-by counsel will consult with you about the propriety or the advisability of filing any of these things. You are entitled to the representation of counsel if you desire counsel to represent you and help you in filing either a motion to modify sentence or an appeal.

Do you understand that you have those rights?

THE DEFENDANT: I understand.

Thus, presently, we do not have a "silent" record regarding whether the appellant was aware of his *Douglas* rights, *i.e.*, the right to appeal and the entitlement to court-appointed counsel to aid him in that endeavor. See also Pa.R.Crim.P. 1405. Accordingly, we do not see the need to remand for a hearing to supplement the record on this matter. See *Commonwealth ex rel. Harbold v. Myers*, 427 Pa. 117, 233 A.2d 261 (1967); *Commonwealth v. Chase*, 227 Pa.Super. 313, 323 A.2d 77, 79 (1974), and compare with *Commonwealth v. Cooney*, 439 Pa. 324, 266 A.2d 650 (1970); *Commonwealth v. Ezell*, 431 Pa. 101, 244 A.2d 646 (1968); *Commonwealth v. Stewart*, 430 Pa. 7, 241 A.2d 764 (1968); *Commonwealth v. Wilson*, supra; *Commonwealth ex rel Neal v. Myers*, 424 Pa. 576, 227 A.2d 845, 847 (1967); *Commonwealth ex rel. Fink v. Rundle*, 423 Pa. 133, 222 A.2d 717, 719 (1966); *Commonwealth v. Sweitzer*, 261 Pa.Super. 183, 395 A.2d 1376, 1381 (1978); *Commonwealth v. Yarbough*, 248 Pa.Super. 356, 375 A.2d 135 (1977); see also *Commonwealth v. Moore*, 440 Pa. 86, 270 A.2d 200 (1970); *Commonwealth ex rel. Robinson v. Myers*, 427 Pa. 104, 233 A.2d 220 (1967).

Additionally, our review of the supplemental brief submitted by the court-appointed counsel to the PCRA court, and the appellate brief prepared by the same attorney, nowhere makes mention that the ineffectiveness of standby[5] counsel is related to the decision to waive the initial opportunity to appeal.[6] Compare *Commonwealth v. Ross*, 289 Pa.Super. 104, 432 A.2d 1073 (1981). Since the waiver of trial counsel issue "is not related to the decision to waive the appeal, such a claim will not be considered once it is established that there has been an effective waiver." See *Commonwealth v. Jumper*, 494 Pa. 451, 454, 431 A.2d 941, 942 (1981); *Commonwealth v. Tenner*, 377 Pa.Super. 540, 545 n. 1, 547 A.2d 1194, 1196 n. 1 (1988); cf. *Commonwealth ex rel. Stanley v. Myers*, 209 Pa.Super. 396, 228 A.2d 215, 216 (1967) ("... it does not follow automatically that waiver of trial counsel includes waiver of counsel on appeal.").

Our examination of the sentencing transcript evidences that the appellant was informed of his Rule 1405 (*Douglas*) rights, and, therefore, his failure to perfect an appeal thereafter was done knowingly and intelligently.[7]

5. Given the level of participation at trial and at sentencing by Attorney Konow, we deem it somewhat of a misnomer to label her as a mere "standby" counsel. See generally *Commonwealth v. Fleming*, 332 Pa.Super. 118, 480 A.2d 1214 (1984).

6. Rather, appellate counsel preoccupies himself with the contention that his client "was prejudiced by the trial court's error in permitting the Appellant to represent himself at trial and by failing to appoint counsel in post-trial proceedings." (Appellant's Brief at 10) First, this issue is never reached because of our finding that the question posed should have been raised on appeal after the appellant's sentencing and it was not, despite the appellant's awareness of the consequences attendant to his failure to do so. See 42 Pa.C.S. § 9544(b) (Supp. 1989). Secondly, were we to reach the issue, we would note that a court cannot force a lawyer upon a defendant where he insists that he wants to conduct his own defense. See *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975).

7. Our thorough review of the record does not evidence that the appellant was so mentally incompetent that he was incapable of waiving either his right to counsel or right to appeal. See generally *Commonwealth v. Melton*, 465 Pa. 529, 351 A.2d 221 (1976); *Commonwealth v. Brown*, 443 Pa. 21, 275 A.2d 332, 335 (1971). He was held to be competent by the pre-trial motions court so as to be tried without counsel. And, the accounting of the events at trial lead this Court to

See *Commonwealth ex rel. Harbold v. Myers*, supra. More importantly, nowhere does the appellant allege that he requested the appointment of post-trial or appellate counsel (or the aid of standby counsel) prior to the PCRA petition.

Accordingly, we affirm the order of the PCRA court although we do so on grounds other than those advanced below. See *Commonwealth v. Tunnell*, 463 Pa. 462, 464 n. 2, 345 A.2d 611, 612 n. 2 (1975); *Commonwealth v. Berthesi*, supra.

Order affirmed.

discount the likelihood that the appellant was somehow incompetent. Thus, had we held that the appellant did not waive his right to appeal, the question of competency would have been found to exist so as to invalidate the appellant's appellate claims of being "incompetent" and the lower court's failure to comply in toto with Pa.R.Crim.P. 318. As to the latter point, we would mention that the appellant was not advised of the fifth and sixth "recommended" guidelines referred to under the *Comment* to Rule 318. However, when a Rule 318 violation occurs, relief is warranted only if the appellant suffers actual prejudice as a result thereof. See *Commonwealth v. Bastone*, 321 Pa.Super. 232, 236, 467 A.2d 1339, 1341 (1983), citing *Commonwealth v. Carver*, 292 Pa.Super. 177, 436 A.2d 1209 (1981).

The appellant claims he sustained actual prejudice in that trial counsel, had he been informed of all six (6) areas discussed in the *Comment* to Rule 318, would not have been waived by him. And, as a result, counsel would have been present to object to the trial court's discussion in its charge to the jury about not being concerned with the appellant's "mental condition" since it was not an issue in the case.

In any event, we find it difficult to believe that standby counsel, given her input by conferring with the appellant during the trial, being present and not objecting if a mistrial were declared on the attempted murder charge because of a "hung" jury and speaking to the issue of clarifying an introduction of an exhibit by the prosecution, would for some reason stand mute when the trial court was giving its instructions to the jury unless she believed that the appellant was not prejudiced by the "mental state" remarks. The scenario belies the inactivity of standby counsel.

We find, as did the PCRA court, the remarks of the trial court on the "mental state" question merely "clarified" the issues for the jury so it would not be sidetracked by the non-existent issue touching upon whether the appellant was *non compos mentis*. See *Commonwealth v. Jordan*, 407 Pa. 575, 181 A.2d 310 (1962); *Commonwealth v. Litman*, 276 Pa.Super. 114, 419 A.2d 121 (1980).