J-A18033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STEPHEN STAHL, | |
| Appellant | No. 1589 MDA 2015 |

Appeal from the Order Entered August 12, 2015
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0001067-2014

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED AUGUST 31, 2016**

Appellant, Stephen Stahl, appeals from the order entered on August 12, 2015, denying his counseled "Petition for Permission to File *Nunc Pro Tunc* Appeal," which constitutes Appellant's first petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The relevant facts and procedural history are as follows:  Appellant, who was a high school teacher, was arrested and charged with one count of corruption of minors, 18 Pa.C.S.A. § 6301(a)(1).  The charge stemmed from a sexual relationship involving Appellant and a fifteen-year-old female student.  Represented by privately-retained counsel, Appellant proceeded to a jury trial, and on January 16, 2015, the jury convicted Appellant of the offense.

*Former Justice specially assigned to the Superior Court.

On March 23, 2015, Appellant proceeded to a sentencing hearing, at the conclusion of which the trial court imposed a sentence of six months to twenty-three months in prison. Moreover, the trial court advised Appellant, in detail, of his post-sentence and appellate rights. N.T. sentencing, 3/23/15, at 5-6. Specifically, the trial court indicated the following:

> [Appellant], I have issued your sentence. You have two choices if you'd like to appeal my sentence. Since you were convicted after a trial, you may appeal to a higher court, or you may file a post-sentence motion in front of me. If you appeal to a higher court you must file an appeal directly to the Superior Court within 30 days of today's date and it must be in writing. If you cannot afford counsel, counsel will be appointed to represent you. If you cannot afford counsel, you should notify me within ten days of the date of today and I will appoint counsel to represent you. If you don't file an appeal, any errors occurring during the trial, or any complaints you have about my sentence, will be lost forever.
>
> You have the right to file a post-sentence motion. This must be done within ten days of today's date and must be in writing. As a direct appeal, if you cannot afford counsel, counsel will be appointed to represent you. If you need court appointed counsel, please notify me within ten days of today and I will appoint counsel to represent you.
>
> It is important that you understand that if you wish to argue on appeal that the guilty verdict in your case is against the weight of the evidence or that your sentence is excessive, you must file a post-sentence motion. With the exception of these two issues, it is not necessary to first file a post-sentence motion with this Court. However, you have the right to file such a motion if you choose to do so. Your post-sentence motion must state specifically the reasons you believe you are entitled to relief.
>
> If you file a post-sentence motion this Court will have 120 days from the date of the filing to make a decision. In certain situations I can extend this deadline for an additional 30 days at the request of your attorney based upon good cause. If I fail to decide your post-sentence motion within this time period, the motion will be denied automatically. Once your post-sentence motion has been denied, you will have 30 days from the date to

file an appeal to the Superior Court. This appeal must be in writing and counsel will be appointed to represent you if you cannot afford to hire one or have your own attorney.

*Id.*

Furthermore, the following relevant exchange occurred regarding privately-retained counsel's continued representation of Appellant:

> **[Trial Counsel]:** Your Honor, I would ask that you grant my withdrawal from the case.
> **THE COURT:** [Appellant], [trial counsel] is requesting that he withdraw from your case. Do you have any objection?
> **[Appellant]:** No, sir.
> **THE COURT:** I will grant that motion.

*Id.* at 7-8.

Thereafter, Appellant filed neither a timely post-sentence motion nor a timely direct appeal from his judgment of sentence. However, on July 2, 2015, Appellant filed a counseled petition entitled "Petition for Permission to File *Nunc Pro Tunc* Appeal." Therein, new counsel, who was a member of the Luzerne County Public Defender's Office, averred that, Appellant, who was incarcerated, had been attempting to contact the Public Defender's Office in order to obtain new counsel; however, the Public Defender's Office did not receive his application for representation until June 23, 2015. Counsel suggested Appellant did not voluntarily waive his right to a direct appeal and that it would be in the "interests of justice" for the trial court to reinstate Appellant's direct appeal rights.

The matter proceeded to a hearing on August 12, 2015, at which Appellant testified. Specifically, the following relevant exchange occurred between Appellant and his court-appointed attorney on direct examination:

**Q:** Sir, can you tell the Court what happened after you were remanded to the Luzerne County Correctional Facility on March 23rd?

***

**A:** Okay. You don't get to call anybody until the counselor would call you down and you had one shot. I tried calling an attorney, that was my one shot. You get to add numbers to your calling list. The numbers I did add were my mother, my sister, my wife, et cetera. That's the only numbers you could call from there. During that time, I think six days had passed and I got acclimated to the system there and I put in a request to seek counsel. I believe it was around April 3rd. I didn't receive any response. Later again that month I tried again. No response. I believe this is the fourth attempt when I finally did get a hold of the public defender. Also during that time I missed- -there's five other requests that weren't answered. I requested to see the counselor again to try to call a lawyer. No response from the counselor. I tried to get a hold of the counselor for early parole. He did not respond. I also tried work-release. Doctor, I had a medical problem while I was there. No response.

**Q:** Sir, what was your level of- -how often were you allowed to be out of your cell during that timeframe?

**A:** Two hours a day.

**Q:** So that would be 22 hours- -

**A:** Of lockdown.

**Q:** On lockdown. Do you recognize this?

**A:** Yes.

**Q:** Can you identify what that is for the record?

**A:** That's my application for the public defender.

***

**Q:** Does it accurately depict what you filled out for the Public Defender's Office?

**A:** Yes.

**Q:** When was that date?

**A:** The 16th of June.

***

**Q:** That is the request that you know was received by the Public Defender's Office?

**A:** Yes.
**Q:** And how did you know that it was received by the Public Defender's Office?
**A:** I received a copy back.
**Q:** Prior to that, did any of your requests- -did you receive a copy back?
**A:** No.
**Q:** After that time, did someone from the Public Defender's Office reach out for you?
**A:** Yes.

N.T. petition hearing, 8/12/15, at 3-6.

On cross examination, Appellant admitted that he knew, at the time of sentencing, he had ten days to file a post-sentence motion and thirty days to file an appeal. *Id.* at 6-7. Appellant agreed that, despite the fact the trial court had instructed him to contact the court if he was in need of counsel following the sentencing hearing, he did not write to or attempt to contact the court. *Id.* at 7-9. Appellant admitted that, although he had ten minutes a day to make telephone calls, he only called an attorney on one occasion, and he did not ask his family to contact either a private attorney or the Public Defender's Office on his behalf. *Id.* Appellant confessed he knew that if he did not have a lawyer he could represent himself and file documents *pro se*. *Id.* at 9.

Further, Appellant initially suggested prison officials prevented him from filing an appeal with the lower court; however, he subsequently admitted he did not draft a notice of appeal or a letter to the trial court asking for an appeal. *Id.* at 9-10. Appellant denied knowing that he could have applied for a public defender via a video system at the prison. *Id.*

At the conclusion of the hearing, the lower court denied Appellant's petition, and thereafter, Appellant filed a timely, counseled appeal to this Court. All Pa.R.A.P. 1925 requirements have been met.

Appellant argues that the lower court erred in failing to reinstate his direct appeal rights *nunc pro tunc*. Initially, we note that the lower court should have treated Appellant's counseled "Petition for Permission to File *Nunc Pro Tunc* Appeal" as a timely petition under the PCRA. The PCRA "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A. § 9542. As the statute declares, the PCRA "is the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies[.]" *Id.* Thus, "if the underlying substantive claim is one that could potentially be remedied under the PCRA, that claim is exclusive to the PCRA." *Commonwealth v. Pagan*, 864 A.2d 1231, 1233 (Pa.Super. 2004) (emphasis omitted).

Here, Appellant's "Petition for Permission to File *Nunc Pro Tunc* Appeal" requests the *nunc pro tunc* restoration of direct appeal rights. The PCRA encompasses Appellant's claim for relief, as Appellant is seeking to obtain collateral relief from his final judgment of sentence and the PCRA may, potentially, provide a remedy for Appellant. *See Commonwealth v. Eller*, 569 Pa. 622, 807 A.2d 838 (2002) (holding a petitioner may not pursue reinstatement of appellate rights *nunc pro tunc* outside of the PCRA);

***Commonwealth v. Farrior***, 809 A.2d 396, 397 (Pa.Super. 2002) (holding "all requests for reinstatement of appellate rights, including PCRA appellate rights, must meet the timeliness requirements of the PCRA").

Appellant's claim, thus, falls under the rubric of the PCRA, and since the PCRA encompasses Appellant's claim, he "can only find relief under the PCRA's strictures." ***Pagan***, 864 A.2d at 1233.[1]  Accordingly, we utilize the following standard of review in this case:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error.  We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. . . .The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Mason***, ___ Pa. ___, 130 A.3d 601, 617 (2015) (quotation marks and quotations omitted).

With regard to the restoration of appeal rights, this Court has recognized that a *nunc pro tunc* appeal should be permitted when the delay in filing an appeal was caused by an extraordinary circumstance, such as fraud or some breakdown in the process of the court.  ***See Commonwealth v. Braykovich***, 664 A.2d 133 (Pa.Super. 1995).  A "breakdown" can occur

---

[1] Since Appellant's counseled petition, which constitutes his first PCRA petition, was filed within one year of the date his judgment of sentence became final, the petition is timely under the PCRA.  ***See*** 42 Pa.C.S.A. § 9545(b)(1).

when the trial court departs from the obligations specified in the Pennsylvania Rules of Criminal Procedure. ***Commonwealth v. Patterson***, 940 A.2d 493 (Pa.Super. 2007). For instance, "[t]he courts of this Commonwealth have held that a court breakdown occur[s] in instances where the trial court, at the time of sentencing, either fail[s] to advise [an] [a]ppellant of his post-sentence and appellate rights or misadvise[s] him." ***Id.*** at 498 (citations omitted).

In the case *sub judice*, the record is clear that the trial court properly advised Appellant of his appellate rights such that there has been no "breakdown" in this regard. ***See Patterson***, ***supra***. Moreover, to the extent Appellant suggested prison officials interfered with his attempt to file a notice of appeal, the lower court, as was within its province, rejected Appellant's testimony. N.T. petition hearing, 8/12/15, at 19; ***Commonwealth v. Spotz***, 624 Pa. 4, 84 A.3d 294 (2014) (indicating credibility determinations are within the province of the PCRA court).

This does not end our inquiry, however, as Appellant avers that he did not otherwise knowingly, understandingly, or voluntarily waive his right to file a direct appeal with the assistance of counsel.

In discussing the PCRA, we have clarified the area of waiver as it relates to a defendant's right to a direct appeal and counsel as follows:

> It is axiomatic that in our scheme of justice an accused has the right to appeal his sentence and to the assistance of appointed counsel, if indigent, in doing so. Concomitantly, the accused has the ability to "waive" his right to counsel and to an

appeal. As our Supreme Court capsulized in **Commonwealth v. Norman**, 447 Pa. 217, 285 A.2d 523 (1971):

> In determining whether a defendant has waived a constitutional right it is well-settled that the federal standards of waiver. . .apply. The waiver of a constitutional right must be "an intentional relinquishment or abandonment of a known right or privilege." The presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed in a silent record case. The United States Supreme Court specifically ruled in **Carnley v. Cochran**, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962):
>
>> "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."
>
> **Id.** at 516, 82 S.Ct. at 890. Thus, this Court is constitutionally bound to place the burden of proving waiver on the Commonwealth. Whether [the] defendant was represented by private or court-appointed counsel. . .are distinctions with no legal significance.
>
> **[Norman]**, 477 Pa. at 221-22, 285 A.2d at 526.
>
> ***
>
> Moreover, as stated by the Supreme Court of Pennsylvania on the subject at hand,
>
>> [T]he trial court, the Commonwealth or trial counsel should place on the record, perhaps immediately after sentence is imposed, a full examination of the accused sufficient to demonstrate that he is aware of his right of appeal and his right of counsel for that purpose, and that he understands the full import of these rights as well as the consequences which may flow from their exercise.
>
> **Commonwealth v. Wilson**, 430 Pa. 1, 6, 241 A.2d 760, 763 (1968) (footnote omitted).

**Commonwealth v. Davis**, 573 A.2d 1101, 1105-06 (Pa.Super. 1990)

(citations, quotations, and emphasis omitted).

- 9 -

In the case *sub judice*, we do not have a "silent" record regarding whether Appellant was aware of his right to file a direct appeal and the entitlement to court-appointed counsel to aid him in that endeavor. Specifically, at the conclusion of the sentencing hearing, as indicated *supra*, the trial court informed Appellant of these rights. Moreover, at the August 12, 2015, hearing, as indicated *supra*, Appellant admitted that he had been informed of and knew these rights.

As to whether Appellant voluntarily relinquished these known rights, based on Appellant's testimony presented at the August 12, 2015, hearing, the lower court concluded "[i]t is clear that [Appellant] originally had no intention of appealing his conviction or sentence." Lower Court Pa.R.A.P. 1925(a) Opinion, filed 11/3/15.[2] Additionally, as it relates to Appellant's assertions that he attempted to secure counsel prior to his June 16, 2015, application to the Public Defender's Office (which was made fifty-four days after the expiration of the appeal period from his judgment of sentence), the lower court specifically found "[Appellant's] vague testimony regarding his alleged attempts to obtain counsel [ ] lack[s] credibility." ***Id.***

Accordingly, we agree with the lower court that Appellant was informed of his right to appeal and the appointment of appellate counsel prior to filing the instant petition. Further, constrained by the lower court's

---

[2] The lower court's Rule 1925(a) opinion is not paginated.

credibility determinations, we find no error of law in the the lower court's conclusion that Appellant's failure to perfect an appeal was done knowingly and intelligently such that he voluntarily relinquished his right to appeal. ***See Davis***, ***supra***.

Finally, we note Appellant baldly suggests that trial counsel was ineffective in failing to ensure new counsel was appointed prior to seeking to withdraw at the sentencing hearing. Appellant's one paragraph argument with regard to this issue prevents meaningful review. ***See*** Appellant's Brief at 11; ***Commonwealth v. Steele***, 599 Pa. 341, 961 A.2d 786 (2008) (finding ineffectiveness claims waived for lack of development). Further, the sole case to which Appellant cites for this proposition, ***Commonwealth v. Stock***, 545 Pa. 13, 679 A.2d 760 (1996), is not on point.

In ***Stock***, our Supreme Court held counsel's failure to file a requested appeal in a summary case, which resulted in a loss of the appellant's state constitutional right to appeal, amounted to extraordinary circumstances permitting the remedy of an appeal *nunc pro tunc*. ***Id.*** at 20, 679 A.2d at 764. Subsequent to ***Stock***, our Supreme Court held that an unjustified failure of counsel to perfect an appeal guaranteed as of right constitutes ineffectiveness *per se*, such that the petitioner is entitled to reinstatement of his direct appeal rights from a judgment of sentence *nunc pro tunc* without establishing prejudice. ***Commonwealth v. Lantzy***, 558 Pa. 214, 736 A.2d 564 (1999).

However, before a court will find ineffectiveness of counsel for failing to file a direct appeal, the petitioner must prove that he requested a direct appeal and counsel disregarded the request. ***Commonwealth v. Ousley***, 21 A.3d 1238 (Pa.Super. 2011). Presently, Appellant has neither averred that he requested trial counsel to file a direct appeal nor that counsel disregarded any such request. ***See Ousley***, ***supra***.

For all of the aforementioned reasons, we conclude the lower court properly held that Appellant was not entitled to the reinstatement of his direct appeal rights *nunc pro tunc*, and accordingly, we affirm the lower court's August 12, 2015, order.

Affirmed.

PJE Ford Elliott joins the memorandum.

PJE Bender notes dissent.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2016