572 A.2d 687

COMMONWEALTH of Pennsylvania, Appellee,

v.

Arnold C. HOLLOWAY, a/k/a Arnold Walker, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 12; 1989.

Decided March 20, 1990.

344

Robert Redmond, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Marilyn Murray, Philadelphia, Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

On May 22, 1986, a jury found appellant guilty of murder in the first degree[1], criminal conspiracy[2] and possession of

1. 18 Pa.C.S. §§ 2501.
2. 18 Pa.C.S. § 903.

an instrument of crime generally.[3] On May 23, 1986, following a hearing, the same jury fixed the penalty for defendant on the first degree murder conviction at death. Post-verdict motions were filed, argued and denied. On March 27, 1987, appellant was sentenced as follows: bill of information No. 1308 (first degree murder)—death as determined by the jury on May 23, 1986; bill of information No. 1306 (criminal conspiracy) five (5) to ten (10) years incarceration consecutive to bill of information No. 1308; bill of information No. 1350 (possession of an instrument of crime generally)—two and one-half (2½) to five (5) years incarceration consecutive to bill of information No. 1306. Appellant directly appealed the Judgment of Sentence.[4] The events leading to the conviction of appellant begin on the early morning of May 16, 1980, when police were summoned to 321 West Sedgley Street in Philadelphia. There, lying in the street, hands bound behind his back with a trench coat belt, and a belt tied around his neck, head blasted by shotgun, was found the dead body of 17 year-old Richard Caldwell. The cause of death; two shotgun blasts to the head and ligature strangulation.

The Commonwealth's evidence at trial consisted of the appellant's confession and corroboration of that confession by admission to one Shirley Baker, who was with appellant before and after the murder. The confession and testimony of Miss Baker gave a glimpse into a lawless world of drug selling and off-hand murder. That evidence describes that the deceased, Richard Caldwell, was a drug pusher for one Leroy Johnson (Bubbles), that he had fallen short in his accounts and was killed at Johnson's behest by the appellant and one Daniel Freeman.[5]

At trial, Miss Baker testified that on May 16, 1980 she was at a bar at 7th and Allegheny with the appellant

3. 18 Pa.C.S. § 907.

4. See 42 Pa.C.S., §§ 722(4); 9711(h)(1). Pa.R.A.P. 702(b).

5. Mr. Freeman was acquitted of all charges in connection with the death of Richard Caldwell by a jury in the Court of Common Pleas, Philadelphia County in May 1985.

and Freeman, when Johnson arrived and invited them to share cocaine. All four repaired to the apartment of Miss Baker. When they arrived at the apartment, Johnson said to the appellant, "Your boy is in the van all high on pills." The appellant replied, "Good I can take care of that now." Thereupon appellant went upstairs, got a shotgun, handed it to Freeman who concealed it in his pants. Johnson gave the keys of the van to appellant and they left. Within an hour they returned and said that the shotgun fired while Freeman was playing with it, shooting a hole in the van floor and that they had strangled and shot Caldwell. Appellant, Johnson and Freeman left to examine the van.[6]

Miss Baker's testimony at trial was consistent with her initial statement to the police which was the basis of the warrant issued for appellant's arrest. When appellant was arrested he made a statement to the police. His statement was admitted into evidence, in which he said he killed Caldwell because Johnson threatened to kill him or his family if he didn't. Appellant said that Johnson wanted Caldwell killed as an example for failing to pay Johnson and other dealers for heroin sold. Appellant went on to describe how he and Freeman strangled the victim and then both took turns shooting him. It is clear that if such evidence was legally posited and believed by the jury, and it was, it was sufficient to sustain conviction. The only questions which remain are concerned with whether the evidence was legally posited.

Whether the evidence was properly admitted will be analyzed in the context of the appellant's contentions of error.

6. It is the obligation of this Court in cases in which the penalty of death has been imposed to review the sufficiency of the evidence supporting an appellant's conviction. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27, n. 3, 454 A.2d 937, 942, n. 3, (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985).

First, appellant levels an attack on the admission of his confession.

Appellant argues that the suppression court erred in failing to suppress his statement. This Court's standard of review in determining whether a suppression court has properly permitted a statement to the police to be used against a defendant at trial has been stated as follows:

Our responsibility on review is "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." ... In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in context of the record as a whole, remains uncontradicted.

*Commonwealth v. Lark*, 505 Pa. 126, 129, 477 A.2d 857, 859 (1984), quoting *Commonwealth v. Kichline*, 468 Pa. 265, 279, 361 A.2d 282, 290 (1976) (citations omitted).

Appellant asserts here that he was denied his right to counsel, that there was a period of unnecessary delay between his arrest and arraignment, and that he either was not given *Miranda*[7] warnings, or did not intelligently and voluntarily waive his *Miranda* rights. In support he relies upon the fact that the loss of the police chronology[8] is indicative of a police conspiracy against him and also demonstrates that the statement used against him was in violation of his *Miranda* rights. The facts, viewed in the light of *Lark id.*, reveal that Philadelphia Police Officer Dominick DiLorenzo received information on May 30, 1985, at 11:25 P.M., over his police radio that the appellant was seen in the area of 52nd and Spruce Streets. When the officer arrived at that location at 11:30 P.M. he observed an individual matching the appellant's description. The suspect fur-

---

7. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. A police chronology is a non-compulsory record maintained by the police which lists by date and time the relevant events which transpire between a subject's arrest and arraignment.

nished identification to the officer at which time the officer informed him that he was wanted on an outstanding homicide warrant. He was then transported to the Police Administration Building in a patrol wagon. When he arrived at approximately 11:50 P.M., he came in contact with Detective Ernest Gilbert who then gave him his *Miranda* warnings and informed him that he was wanted for questioning in connection with the homicide of Richard Caldwell. From then on Detective Gilbert interviewed the appellant until approximately 1:00 A.M. on May 31, 1985, and then at that time reduced the results of that interview to typewritten form. The statement was given to the appellant who then read it and did not contest its accuracy. However when the Detective asked the appellant to sign it he refused stating that he first wished to consult with his attorney. His request was complied with and his attorney recommended that he not endorse the document. He was provided with a meal which he did not consume and was subsequently arraigned at 5:00 A.M. on May 31, 1985, within six hours of his arrest.

Based upon these facts and accepting them as we must, under the standard enunciated by this Court in *Lark id.*, we are satisfied that the record supports the suppression court's finding that the appellant was provided with *Miranda* warnings, voluntarily and intelligently waived his *Miranda* rights, was permitted to consult with his attorney and wife by telephone when requested and was arraigned within six (6) hours of his arrest [9]. Therefore admission of the statement was proper. *Lark id.*

■ Appellant next presents numerous allegations of trial counsel's ineffectiveness. He first argues that trial counsel was ineffective by permitting the appellant to take the witness stand to testify in his own defense.

---

**9.** As the period of time between appellant's arrest and subsequent arraignment and the issuance of his statement did not exceed six hours, it is unnecessary to discuss the appropriateness or relevance of the six-hour rule.

In *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), this Court crystalized the standard to be employed in evaluating the effectiveness of counsel. There we determined that counsel's performance is to be evaluated in light of its reasonableness if it is determined that the underlying claim is of arguable merit, we also presume that counsel is acting effectively. Second, a defendant is required to demonstrate prejudice. *Pierce id.*

Though this Court has stated that the decision of whether or not to testify at trial rests solely with the defendant rather than counsel, *Commonwealth v. Rawles,* 501 Pa. 514, 462 A.2d 619 (1983), it is difficult if not impossible to visualize how appellant could have forwarded his proposed defenses in silence. His defenses were first that his confession was involuntary and second that he was not present at the scene of the crime at the operative moment. Clearly these defenses were such that any credible presentation would require his appearance. It should also be noted that this appellant was incapable of being impeached through the introduction of crimin falsi convictions as none existed. Having determined that the decision to testify was his and his alone and that counsel could not prevent the appellant from so acting, this argument is without merit [10].

He next argues that trial counsel was ineffective in failing to impeach the credibility of Commonwealth witness Shirley Baker by presenting expert testimony regarding the effects of long term cocaine usage upon the brain and memory. However since appellant has not alleged that such a witness existed, was available and was willing to testify, his assertion of ineffectiveness is in the abstract and therefore without merit. *Commonwealth v. Floyd,* 506 Pa. 85, 484 A.2d 365 (1984). We do note that trial counsel

**10.** The appellant also argues that trial counsel was ineffective for failing to argue a motion to suppress his statement to the police on the basis that there was an unreasonable period of delay between arrest and arraignment. Since the period was not unreasonable a motion by counsel to suppress would have been a futile gesture. Therefore this allegation of ineffectiveness is without merit. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985).

cross-examined the witness extensively regarding her agreement with the prosecution in her open drug cases; her consumption of alcohol and drugs at the time of her observations; her expenditures on drugs and the inconsistencies between her trial testimony and her statement. Though the attempts to impeach this witness were unsuccessful, such failure does not indicate that counsel was ineffective but rather that the jury found the testimony of Shirley Baker more credible than that of the appellant despite the magnitude of the impeachment evidence offered against her.

 Appellant next argues that trial counsel was ineffective for failing to present evidence of mitigating circumstances at the penalty stage of the proceedings. Specifically he argues that counsel was deficient for failing to bring to the jury's attention that he was subject to the domination of Johnson; could not read or write; had not sold drugs since 1983; had grown up in a crime infested neighborhood and was the product of a broken home and suffered from alcohol dependency. These assertions are totally without merit. Initially it should be noted that any argument by counsel to the effect that appellant was controlled by Johnson would have been inconsistent with his defense at time of trial which was that he was not at the scene of the crime. Similarly there was no evidence offered that he was unable to read or write, on the contrary the evidence disclosed that he had attended school but did not progress beyond the sixth grade. The record also discloses that the appellant did not wish a continuance to secure the presence of other witnesses who would have testified as to his environment and good character. In fact the only witness he would allow to come forward was his wife. Primarily on the basis of her testimony the jury found the mitigating circumstance of character.[11] The jury also found that the appellant had no significant history of prior criminal convictions. 42 Pa.C.S. § 9711(e)(1). Because the decision to limit testimonial evidence in aid of mitigation was at the request of

11. 42 Pa.C.S. 9711(e)(8).

appellant, trial counsel should not be deemed ineffective for respecting his client's wishes.

Appellant next argues that an act of prosecutorial misconduct occurred during summation at the guilt phase of the trial when the prosecutor argued that Commonwealth witness Shirley Baker feared for her life. The comments made by the prosecution were as follows:

> "For coming in here and testifying in a Capital murder case against the guy that did it, what do you think they would like to do to her." (N.T. at 59)

> \* \* \* \* \* \*

> "What do you think Nasir would like to do to her? Consider it." (N.T. at 60)

> \* \* \* \* \* \*

> "I submit to you she got nothing out of this case, nothing except the problems that we've already discussed, living a life of looking over her shoulder or going to prison." (N.T. at 62)

Generally comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730 (1984); *Commonwealth v. Tabron,* 502 Pa. 154, 465 A.2d 637 (1983); *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983). Clearly the comments here did not rise to such level. Furthermore they were logical and proper inferences drawn from the surrounding facts. Most obvious was the fact that the victim had been eliminated for a mere shortage in receipts. That one might fear like revenge for the even worse betrayal of aiding the police, the inferences were in the ambit of fair comment. *Commonwealth v. Barren,* 501 Pa. 493, 498, 462 A.2d 233, 235 (1983).

Appellant next argues that the trial court committed an abuse of discretion by permitting the prosecutor to read the statement of Shirley Baker into evidence.

Generally evidentiary rulings are subject to the discretion of the trial court and will not be reversed absent a clear showing of abuse. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). The instant statement was read into evidence by the prosecutor in an attempt to impeach the credibility of the appellant who had just finished testifying that the statement he was alleged to have made was fabricated from Shirley Baker's statement. To rebut this allegation the prosecutor furnished the Baker statement to the appellant to show him that there were facts contained in his statement that were absent from hers. When he refused to even touch the document, the prosecutor, at the suggestion of the trial court, read him the statement. Since the statement failed to add any facts not already in evidence as the result of appellant's own statement, he suffered no prejudice. Thus this allegation is without merit. *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978).

The appellant next argues that the Commonwealth failed to prove any of the aggravating circumstances found by the jury beyond a reasonable doubt. The jury found that the appellant participated in a killing for hire, 42 Pa.C.S.A. § 9711(d)(2) and that the killing was effectuated by means of torture, 42 Pa.C.S.A. § 9711(d)(8). Our death penalty statute provides for the aggravating circumstance of killing for hire when it is demonstrated that:

> (2) The defendant paid or was paid by another person or had contracted to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim.

*Id.* 42 Pa.C.S.A. § 9711(d)(2). The evidence presented at trial by both the appellant's and Shirley Baker's statements revealed that the appellant was in the employ of Johnson and that the victim owed money to Johnson and to others

which debts were not satisfied. Johnson then instructed the appellant to "get on your job." With that, the victim was killed. To kill for pay does not require a specified amount in the agreement. The consideration may be what suits the purposes of each; money or services. Here the jury could accept that since appellant worked as a drug middleman for Johnson and that murder was part of the job description. Clearly the only distinguishing feature between the above employment scenario and a classic killing for money is that the appellant contracted to sell drugs in addition. Accordingly we find that the Commonwealth provided ample evidence for the jury to find this aggravating circumstance.

The appellant next contests the finding that the victim was tortured. Here the record reflects that both the appellant and co-defendant transported the victim to a place located six city blocks away from Shirley Baker's apartment. The Commonwealth presented testimonial evidence that such a journey would take three minutes by vehicle. Shirley Baker testified that both the appellant and co-defendant did not return for almost an hour. During that time two trench coat belts were fastened to the victim's neck. First the co-defendant attempted to strangle the victim and then the appellant tried his hand. The cohorts then became involved in what may best be described as a "tug-of-war" with the victim's neck placed in the balance. Both men proceeded to tug in opposite directions. When the competition was over, first the co-defendant and then the appellant took turns at shooting the victim in the head with a shotgun. Since they came armed with a shotgun, the jury could find that the strangulation was but a cruel prelude to an intended denouement by that gun. It was not unreasonable for the jury to infer from the evidence presented that it was the intent of both the appellant and co-defendant to first torture the victim.

The appellant last argues that he was denied due process in that trial counsel was ineffective during the penalty stage of the proceedings. Having previously determined

that counsel was not ineffective and that the brevity of the evidence offered in aid of mitigation was at the behest of the appellant, this issue is also without merit.

Lastly, in all cases in which the death penalty has been imposed, we are obligated by statute to review the record and to assure that the death sentence rendered by the jury is not excessive or disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3)(iii). In making such a determination we rely on the information accumulated by the Pennsylvania Death Penalty Study, formulated pursuant to this Court's decision in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, see attached Appendix, *cert. denied, Frey v. Pennsylvania*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). After a review of the information we are satisfied that the sentence of death is not excessive or disproportionate.

Accordingly, the judgment of sentence is affirmed.