J-S16016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PRINCE ISAAC | |
| Appellant | No. 1797 EDA 2015 |

Appeal from the PCRA Order May 8, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0002120-2007

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED JULY 19, 2016**

Prince Isaac brings this appeal from the order entered May 8, 2015, in the Court of Common Pleas of Chester County, that denied his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546.  A jury convicted Isaac of murder in the first degree and conspiracy,[1] and the trial court sentenced him to life imprisonment. Isaac raises numerous claims of appellate counsel's ineffectiveness.  Based upon the following, we affirm in part, and vacate in part, and remand for further proceedings.

---

[1] 18 Pa.C.S. §§ 2502(a) and 903(a)(2).

We recount the relevant facts and procedural history as set forth in this Court's decision on direct appeal, and the PCRA court's opinion, as follows:

> [Isaac] and his brother and co-conspirator, Shamek Hynson [Hynson], had a powerful motive to kill the victim, Omar Reid [the victim], on October 18, 2004. The murder was an act of retaliation against [the victim] for an incident involving another one of their brothers – Ramek Neal -- that took place nearly one year earlier. On November 5, 2003, at approximately 10:30 p.m., Neal and another individual broke into [the victim's] apartment at 416 Victoria Drive, in the Regency Park complex located in Coatesville, Chester County, Pennsylvania. Neal brandished a pistol while demanding [the victim's] property. [The victim] fought back and in self-defense shot Neal, leaving Neal paralyzed from the neck down. This November 2003 incident was the subject of subsequent family meetings attended by both [Isaac] and Hynson.
>
> On October 18, 2004, at approximately 11:00 p.m., [Isaac] drove Hynson to [the victim's] apartment at 416 Victoria Drive in a Kia automobile that had been taken from a couple in Lancaster, Pennsylvania, to be used in the murder. Hynson got out of the Kia and knocked on [the victim]'s front door. As [the victim] opened the door, Hynson asked "are you Omar?" and then shot [the victim] six times. Shell casings were ejected from Hynson's pistol and left at the murder scene. [The victim] collapsed and died on top of his five-year-old son, who had been on the living room floor near the front door. After the shooting, [Isaac] gestured to Hynson, from inside the Kia, to "hurry up." This was observed by a witness looking out the window of her apartment. Hynson ran to the Kia, which was waiting for him with the front passenger's door open. After Hynson got into the Kia, he closed the door, and [Isaac] sped away from the scene.
>
> A police officer happened to be driving into the Regency Park complex when a 911 dispatcher advised him of the shooting. The officer spotted the Kia and gave chase. During the chase, the murder weapon -- a Hi-Point .380 -- was thrown from the car into the brush next to a railroad track. Due to the wet roadway, [Isaac] lost control and crashed the Kia into a ditch. [Isaac] and

Hynson fled in different directions, and neither was apprehended by police at that time.

Other individuals in [Isaac's] Buick Riviera (another getaway vehicle) had been waiting, as planned, near the Regency Park complex and observed the police chasing the Kia to the location in Coatesville where [Isaac] had earlier switched from driving his own car, the Buick, and begun driving the Kia. They picked up Hynson, and Hynson told them that he had "just shot a man," that he and [Isaac] were being chased, and that [Isaac] was still running from the police. Hynson and others then drove around Coatesville looking for [Isaac] and trying to find the gun that had been "tossed" during the getaway chase. Neither [Isaac] nor the gun was located, so they visited Ramek Neal to advise him of what happened and then returned to Lancaster. [Isaac] also made his way back to Lancaster. When he arrived, he was wet, he had a gash on his head, and his clothing was ripped. [Isaac] told his friends that, while being chased by the police, he had crashed the Kia and then had to run on foot.

[Isaac's] fingerprints were found on the interior driver's door window of the crashed Kia. DNA testing confirmed the presence of Hynson's blood on the interior passenger's side of the Kia. Gunshot residue was also found inside the Kia. The murder weapon was found almost a year later by a woman walking her dog near the railroad tracks along [Isaac's] escape route. That weapon was traced back to a straw purchase in North Carolina made by Tolanda Williams, the mother of Hynson's child. Williams testified that during the week before the murder, she went with [Isaac] and Hynson to several pawn and gun shops in [Isaac's] Buick, to be the straw purchaser of guns. The tag number of [Isaac's] Buick was written down by one of the shop owners who became suspicious of one of the transactions. During cross-examination, the gun shop owner identified [Isaac] as the driver of the Buick. The Hi-Point .380 murder weapon was also used by Hynson to shoot Edward Cameron in Lancaster at approximately 4:30 p.m. on October 18, 2004 -- less than seven hours before [the victim] was murdered in Coatesville. Shell casings from the two shootings were all matched to the Hi-Point .380 found along the escape route. Cell phone records indicated that [Isaac's] cell phone was active and used in the Coatesville area during and after the time of the murder.

***Commonwealth v. Isaac***, 46 A.3d 830 (Pa. Super. 2012) (unpublished

memorandum, at 1–2, *quoting* Trial Court Opinion, 10/26/09, at 1-4),

*appeal denied*, 50 A.3d 125 (Pa. 2012). Police arrested Isaac on April 11,

2006, and charged him with murder of the first degree, murder of the third

degree, criminal conspiracy to aid and engage in homicide, and other related

offenses.[2]

> … On July 1, 2009, after a six day trial in which he represented
> himself with standby counsel, a jury convicted [Isaac] of murder
> in the first degree [and conspiracy] in the death of Mr. Reid.
> [Isaac's] brother, Shamek Hynson, pled guilty to Mr. Reid's
> murder in a separate proceeding. On July 8, 2009, [Isaac] was
> sentenced to life in prison. The Pennsylvania Superior Court
> affirmed his judgment of sentence on February 29, 2012. On
> August 13, 2012, the Pennsylvania Supreme Court denied his
> petition for allowance of appeal. [***See Commonwealth v.
> Isaac***, 46 A.3d 830 (Pa. Super. 2012), *appeal denied*, 50 A.3d
> 125 (Pa. 2012).]
>
> On November 12, 2013, represented by new counsel, [Isaac]
> filed a PCRA petition in which he raised seven claims of appellate
> counsel ineffectiveness. The Commonwealth subsequently filed
> its answer to [Isaac's] petition, and on October 16, 2014, we
> held a PCRA hearing on [Isaac's] claims.

PCRA Court Opinion, 5/8/2015, at 1–2 ("Factual and Procedural History").

At the October 16, 2014, hearing, PCRA counsel "argued one claim of

appellate counsel ineffectiveness and rested on the contents of his PCRA

petition for the other six claims." PRCA Court Opinion, 5/8/2015, at 2. The

certified record does not contain a transcript for the October 16, 2014

_____

[2] ***See*** 18 Pa.C.S. §§ 2502(a), 2502(c), and 903(a)(1), (a)(2), respectively.

hearing. Isaac states in his brief that "[t]he lower court held a hearing on October 16, 2014 where no additional evidence was presented." Isaac's Brief at 34. On May 8, 2015, the PCRA court denied relief, and this appeal followed.[3]

Isaac raises the following issues for our review:

A. Was appellate counsel constitutionally ineffective for failing to raise on direct appeal, or in her Statement of Errors Claimed of on Appeal, that [Isacc's] waiver of his state and federal constitutional right to counsel was not knowing, intelligent, or voluntary, because the trial court conducted a constitutionally defective oral and written colloquy by failing to apprise [Isaac] of the elements of the offenses, failing to assure petitioner understood those rights to which he expressly denied understanding, and failing to receive a signed sufficiently detailed written waiver?

B. Was appellate counsel ineffective for failing to properly raise on direct appeal that the trial court abused its discretion in permitting the Commonwealth to introduce evidence relating to Tolanda Williams' purchase of weapons for Shamek Hynson and [Issac] other than the murder weapon (the .380), and permitting the testimony of Joseph LaJueunesse, as the purchases and the facts surrounding those purchases were not relevant for Rule 404(b) purposes, were duplicative of other evidence introduced, and the prejudicial effect substantially outweighed the probative value?

C. Was appellate counsel ineffective for failing to properly raise on appeal that the trial court erred in prohibiting the admission of Michael Fowler's admission to Gregory Stacey and Taquan Isaac that he (Fowler) and Shamek

---

[3] Isaac timely complied with the PCRA court's order to file a concise statement, pursuant to Pa.R.A.P. 1925(b).

Hynson killed Omar Reid as an exception to hearsay under Pennsylvania Rule of Evidence 804(b)(3)?

D. Was appellate counsel ineffective for failing to raise on appeal that the trial court erred in permitting the Commonwealth to introduce [Isaac's] statements to Lindsay Colon that [Isaac] "persuasive[ly]" told her to "plead the Fifth" when testifying against him because the statement was not relevant and unduly prejudicial as it was made in reference to a criminal matter unrelated to the instant charges, and the trial court failed to require a proper foundation as to its relevance over [Isaac's] objection.

E. Was appellate counsel ineffective for failing to raise in her 1925(b) Statement of Errors Complained of on Appeal that the trial court abused its discretion by permitting the Commonwealth to impeach Michael Fowler with extrinsic evidence of an unadopted and unsworn summary written by a police officer of statements allegedly made during a proffer discussion?

F. Was appellate counsel ineffective for failing to raise on appeal that the prosecutor committed misconduct during the closing argument by characterizing [Isaac] as a "player" and positing his guilt by association with the unrelated crimes of his witnesses, which independently and in the aggregate inflamed the passions of the jury causing undue prejudice?

G. Did appellate counsel's cumulative errors in failing to raise all of the above claims result in prejudice as the result of the trial would have been different if the trial court had not committed the errors alleged?

Isaac's Brief at 5–7.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101, 108 (Pa. Super. 2011). This

Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007).

Isaac first argues appellate counsel was ineffective in failing to properly raise on direct appeal that the trial court's waiver of counsel colloquy was constitutionally defective and that his waiver of counsel was not knowing, intelligent, and voluntary. Isaac contends the trial court conducted a constitutionally defective oral and written colloquy by failing to apprise Isaac of the elements of the offenses, failing to assure Isaac understood those rights which he expressly denied understanding, and failing to receive a signed sufficiently detailed written waiver. Isaac argues appellate counsel was ineffective because the challenge to his waiver of trial counsel was solely on the basis that he was incompetent to do so.

Even though Isaac's appellate brief presented the claim, as follows: "Whether the Defendant was denied his right to a fair trial when the Court granted Defendant's motion to Waive Counsel and to Proceed in Propria Persona,"[4] this Court found waiver. This Court stated:

> The next issue presented is whether the trial court erred in granting appellant's request to waive counsel and proceed ***in propria persona***. In his Rule 1925(b) statement, appellant claimed that the court "relied on his technical legal knowledge and courtroom skill and not his competency to stand trial." (***See***

---

[4] ***Commonwealth v. Isaac***, 46 A.3d 830 (Pa. Super. 2012) (unpublished memorandum, at 6, *citing* Isaac's Brief at 7)

docket #148.) We find this issue to be waived as it is raised for the first time on appeal. **See** Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Appellant did not object to proceeding *pro se* either prior to or during the time of trial. ***Nor has appellant challenged the validity of the waiver itself by suggesting that the trial court's colloquy was defective***. ***Instead, he has lodged an objection at the time of appeal based solely on his competency.***

***Commonwealth v. Isaac***, 46 A.3d 830 (Pa. Super. 2012) (unpublished memorandum, at 10) (emphasis supplied).

The Commonwealth takes the position the issue has been "previously litigated" in this Court and, therefore, should be dismissed. ***See*** Commonwealth Brief at 15, *citing* 42 Pa.C.S. § 9543(a)(3).[5] However, we are not persuaded by the Commonwealth's argument. On direct appeal Isaac challenged his self-representation by framing the issue in the concise statement as "his competency **to stand trial**" — a distinctly separate issue from the waiver of counsel colloquy claim. This Court pointed out that Isaac had not challenged the colloquy as defective. Since Isaac could have raised the issue of the colloquy on direct appeal, ***see Commonwealth v. Davido***,

_____

[5] Section 9545(a)(3) requires that in order to be eligible for relief, a petitioner must show that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9545(a)(3). ***See also*** 42 Pa.C.S. § 9544(a)(2), (a)(3) (an issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.").

868 A.2d 431, 437–438 (Pa. 2005),[6] the issue has been waived and cannot be litigated in a PCRA petition. **See** 42 Pa.C.S. § 9544(b) (issues are waived for purposes of PCRA review if the petitioner could have raised them on appeal). Nevertheless, Isaac's claim that appellate counsel was ineffective for failing to raise the issue on direct appeal is not waived. A claim of trial court error is different from a collateral claim of ineffectiveness of **appellate counsel** for failure to raise and preserve the issue for direct review. **See Commonwealth v. Collins**, 888 A.2d 564, 571 (Pa. 2005). Therefore, we will proceed to consider Isaac's claim of appellate counsel's ineffectiveness for failing to challenge the waiver of counsel colloquy on direct appeal.

To obtain relief on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in **Strickland v. Washington**, 466 U.S. 668, 687 (1984). This Court has applied the **Strickland** test by looking to the following three elements that must be satisfied: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his actions or failure to act; and (3) the PCRA petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the

---

[6] In **Davido**, the Pennsylvania Supreme Court ruled that "it is up to the trial court, and not counsel, to ensure that a colloquy is performed if the defendant has invoked his right to self-representation." 868 A.2d at 437. The **Davido** Court held that the issue of an insufficient waiver of counsel colloquy could be raised on direct appeal and did not have to be raised as an ineffective assistance of counsel claim. **Id.** at 437–438.

proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Montalvo*, 986 A.2d 84, 102 (Pa. 2009). To succeed on a stand-alone claim of appellate counsel's ineffectiveness, a PCRA petitioner must demonstrate that appellate counsel was ineffective in the manner by which he litigated the claim on appeal. *Commonwealth v. Koehler*, 36 A.3d 121, 142 (Pa. 2012).

Isaac argues that if appellate counsel adequately raised the waiver of counsel colloquy issue on direct appeal, this Court would have awarded him a new trial. *See* Isaac's Brief, at 45.

Pennsylvania Rule of Criminal Procedure 121 sets out the framework for inquiry into a defendant's request for self-representation. The Rule states, in relevant part:

> (A)(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:
>
>> (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>>
>> (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>>
>> (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa. R. Crim. P. 121(A)(2).

Turning to the facts of the present case, on September 18, 2008, Isaac filed in open court a *pro se* "motion to waive counsel and proceed in propria persona." Two oral colloquies followed. At the first colloquy on September 18, 2008, the trial court questioned Isaac by following a written colloquy form. Isaac stated on the record that he did not know the elements of the offenses, and the trial court ultimately decided that Isaac should continue with his counsel, but left the issue open for Isaac to raise in the future. ***See*** N.T., 9/18/2008, at 61–62. Thereafter, Isaac moved to proceed *pro se* on October 2, 2008. When the court attempted to question Isaac again by following the written colloquy form,[7] Isaac acted in a contumacious manner

---

[7] Isaac did not sign a written colloquy form.

and replied to the court's questions with irrelevant answers such as "these proceedings are void," and "I stand by my affidavit of specific negative averment." The colloquy ended with the trial court granting Isaac's request to represent himself and allowing Isaac to waive counsel and proceed *pro se*.[8] **See** N.T., 10/2/2008 at 29. However, "although the colloquies were extensive, [the trial court] did not specifically list for [Isaac] each element of each of the charges against him." PCRA Court Opinion, 5/8/2015, at 4–5.

The Pennsylvania Supreme Court has indicated that it is "the trial judge who [is] ultimately responsible for ensuring that the defendant is questioned about the six areas discussed above and for determining whether the defendant was indeed making an informed and independent decision to waive counsel." **Davido**, **supra**, 868 A.2d at 437 (quotations and citation omitted). Likewise, it is the trial judge who has "the duty to ensure that a defendant's right to counsel was protected." **Id.** (quotations and citations omitted). Once a defendant expresses a desire to represent himself, the "[f]ailure to conduct a thorough on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error." **Commonwealth v. Houtz**, 856 A.2d 119, 124 (Pa. Super. 2004) (citation omitted) (vacating judgment of sentence where trial court's waiver of

---

[8] The trial court appointed the two attorneys representing Isaac as stand by counsel. **See** N.T., 10/08/2009, at 29.

counsel colloquy did not ensure appellant understood, *inter alia*, the nature and elements of the charges and the range of penalties the court could impose).

The trial court must "cover all of the areas set forth in the comment to Rule 121, to ascertain whether Appellant was executing a knowing, voluntary and intelligent waiver of counsel." ***Houtz, supra*** at 130. "Regardless of the defendant's prior experience with the justice system, a penetrating and comprehensive colloquy is mandated." ***Id.*** at 124 (citation omitted). "[W]e may not apply a totality analysis to a waiver of counsel colloquy." ***Commonwealth v. Payson***, 723 A.2d 695, 704 (Pa. Super. 1999). Furthermore, "the appointment of standby counsel does not eliminate or alter [Rule 121's] requirement." ***Commonwealth v. Brazil***, 701 A.2d 216, 219 (Pa. 1997).

In ***Commonwealth v. Clyburn***, 42 A.3d 296 (Pa. Super. 2012), this Court held that Clyburn's waiver of her right to counsel was inadequate and awarded her a new trial where the trial court did not "specify the charges brought against [Clyburn] and the elements of each of those charges." ***Id.*** at 301. This Court, in a footnote, rejected the Commonwealth's argument that the defendant could not prevail because she had failed to establish how

she was prejudiced by lack of counsel.[9]  **Clyburn** was decided on February 27, 2012, two days before this Court affirmed Isaac's judgment of sentence.

Isaac asserts he "correctly argues precisely what the appellant argued in **Clyburn**, that the waiver was not knowing, intelligent and voluntary because the colloquy was ineffective."  Isaac's Brief at 47.  Isaac maintains

_____

[9] The **Clyburn** Court opined:

> Relying upon **Commonwealth v. Meehan**, 427 Pa. Super. 261, 628 A.2d 1151, 1159 (Pa. Super. 1993), **Commonwealth v. Davis**, 393 Pa. Super. 88, 573 A.2d 1101, 1108 n.7 (Pa. Super. 1990), **Commonwealth v. Bastone**, 321 Pa. Super. 232, 467 A.2d 1339, 1341 (Pa. Super. 1983), and **Commonwealth v. Carver**, 292 Pa. Super. 177, 436 A.2d 1209, 1211 (Pa. Super. 1981), the Commonwealth argues that Appellant is not entitled to relief because she fails to establish how she was prejudiced by the lack of counsel. **See** Commonwealth's Brief at 11 n.2. We conclude these cases are inapposite because they involve matters with different procedural postures. Both **Meehan** and **Davis** were on appeal under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The cases of **Bastone** and **Carver** involved matters where counsel was not present at the preliminary hearing stages.

> ****

> Our research has revealed there is no need for a showing of prejudice when a defendant proceeded to trial without a legally sufficient waiver of her constitutional right to counsel. **See Commonwealth v. Brazil**, 549 Pa. 321, 701 A.2d 216 (1997) (granting new trial for defective waiver colloquy without analyzing whether the appellant suffered prejudice); **Houtz**, 856 A.2d at 130 (same). **See also Payson**, 723 A.2d at 704 ("[A]ny shortcoming relative to this colloquy cannot be gauged to the quality of an accused's self-representation nor justified on the basis of his prior experience with the system.").

**Id.** at 302 n.3.

- 14 -

that he must show "that counsel was deficient in failing to raise the meritorious claim, and that this Court would have vacated his conviction on direct appeal if not for counsel's failure [and h]e succeeds on both prongs." *Id.* Given that the trial court's colloquy in this case did not specify the elements of each of the charged offenses and that this Court stated Isaac failed to raise the issue of validity of the waiver of counsel colloquy, we conclude Isaac's claim has arguable merit.

It is significant, however, that the posture of this case differs from *Clyburn*. Due to the discrepancy between Isaac's counseled Rule 1925(b) claim, which challenged "competency," and the issue raised by counsel on appeal, namely, a challenge to the court's grant of Isaac's motion to waive counsel, we are presented with a **PCRA claim of ineffective assistance of counsel** for waiving the issue of the adequacy of the Rule 121 colloquy, as opposed to a preserved issue challenging the colloquy as in *Clyburn*. As such, appellate counsel's manner of litigating the direct appeal is directly at issue. However, the record does not reveal appellate counsel's reasoning since no witnesses testified at the PCRA hearing.

The Pennsylvania Supreme Court has instructed that "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." *Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010). "The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to

- 15 -

raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking." *Id*. at 896, *quoting* **Commonwealth v. Spotz**, 870 A.2d 822, 832 (Pa. 2005).

We conclude that appellate counsel must have the opportunity to state her reasons for the course of action taken when she filed the Rule 1925(b) statement.[10] Accordingly, we hold that an evidentiary hearing is necessary to develop the record for this claim. Further, as we are remanding for a hearing concerning the existence of a reasonable basis for counsel's actions, the PCRA court should make any assessment of prejudice in the first instance. **See Spotz**, at 835.

Our discussion, however, does not end here, since Isaac has raised various other claims of appellate counsel's ineffectiveness. Therefore, we will address these claims sequentially. We reiterate that under the **Pierce** test a petitioner must show: 1) the underlying claim is of arguable merit; 2) no reasonable basis existed for counsel's action or inaction; and 3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. **Pierce, supra**, 527 A.2d at 975.

_____

[10] We note that **Clyburn** was not issued until after appellate counsel had filed Isaac's Rule 1925(b) statement and that the **Clyburn** Court specifically addressed the issue of prejudice in a footnote to its decision.

In the second issue, Isaac claims appellate counsel was ineffective in failing to challenge on direct appeal the trial court's evidentiary ruling permitting the Commonwealth to introduce evidence relating to Tolanda Williams' straw purchase of weapons for Shamek Hynson and Isaac, and permitting the testimony of Joseph LaJueunesse.

By way of background, the PCRA court explained:

> Tolanda Williams is the mother of Shamek Hynson's child. At trial she testified that on October 14, 2004, she purchased the [.380] gun used in the murder of Omar Reid for Shamek Hynson. She also testified about other straw purchases of firearms that she made for Hynson, and for [Isaac], on October 15, 2004.

PCRA Court Opinion, 5/8/2015, at 10 (record citations omitted). [11]

Isaac argues the evidence concerning his purchase of guns other than the murder weapon was irrelevant and inadmissible. We disagree.

"The admissibility of evidence is within the sound discretion of the trial court, and we will not disturb an evidentiary ruling absent an abuse of that discretion. *Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014).

---

[11] We note that although Isaac's argument, as stated, references the testimony of Joseph LaJeunesse, Isaac does not specifically mention LaJeunesse in his discussion of this ineffectiveness issue. LaJeunesse, owner of the Varmint Hunters Den in South Carolina, testified that on October 15, 2004, Williams and several men came into his store. He stated Williams bought a Tec-22, while three males waited for her in a Buick Riviera. On cross-examination by Isaac, LaJeunesse identified Isaac as the driver of the Buick. *See* N.T. 6/23/2009, at 153–169.

Pennsylvania Rule of Evidence 404, governing the admission of "prior bad acts," provides, in relevant part:

**(b) Other crimes, wrongs, or acts**.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. Rule 404(b)(1)-(3). "If such evidence is admitted, the trial court must instruct the jury as to the limited purpose for which they may consider the evidence of a defendant's prior bad acts." *Commonwealth v. Davis*, 737 A.2d 792, 796 (Pa. Super. 1999) (citation omitted).

Here, the PCRA court, citing Pa.R.E. 404(b), rejected Isaac's argument, opining:

Instantly, the challenged evidence was properly admitted for the limited purpose of showing opportunity and possession of the murder weapon, and [Isaac's] joint action with Shamek Hynson related to the firearm. In addition, the admission was subject to cautionary instructions to the jury. Twice, the Court instructed the jury it was not to regard this testimony as evidence of [Isaac's] bad character or his criminal tendencies, but rather only for the limited purpose previously outlined.

PCRA Court Opinion, 5/8/2015, at 10–11 (record citations omitted). We agree with the Rule 404(b) analysis of the PCRA court and its conclusion that Isaac's claim is without merit. *See e.g., **Commonwealth v. Briggs***, 12 A.2d 291 (Pa. 2011) (testimony of appellant's previous purchase of gun that was not the murder weapon admissible because it constituted part of the sequence of events forming the history of this case). Accordingly, his claim of appellate counsel's ineffectiveness for failing to raise this issue on appeal must fail.

In his third claim, Isaac contends appellate counsel was ineffective for failing to challenge the trial court's evidentiary ruling that prohibited evidence regarding Michael Fowler's admission that he and Shamek Hynson killed Omar Reid as an exception to hearsay under Pennsylvania Rule of Evidence 804(b)(3).

At the time of trial, Pa.R.E. 804(b)(3) provided:

**(b) Hearsay Exceptions**. The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * *

**(3) Statements against interest**. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Pa.R.E. 804(b)(3).

By way of background, Fowler testified for the defense. On cross examination by the prosecutor, Fowler testified, "I don't remember none of this. I don't remember me saying the statement [to police]." N.T., 6/29/2009, at 943. Thereafter, Isaac attempted to elicit testimony from defense witnesses Gregory Stacey and Taquan Isaac, who is Isaac's cousin,[12] that Fowler had confessed to this murder when they were incarcerated together. The prosecutor objected and the trial court precluded the testimony. *See* N.T., 6/29/2009, at 967, 970–971.

The next day, the trial court again considered Rule 804(b)(3), and allowed Isaac to make a proffer from Taquan Isaac regarding Fowler's alleged admission. Despite the fact that Fowler had testified, the trial court found that Fowler was "unavailable" based upon lack of memory, thereby meeting the unavailability requirement of Rule 804(b). *See* N.T., 6/30/2009, at 1023. However, the trial court determined that Fowler's purported admission did not meet the trustworthiness requirement of Rule 804(b)(3), and was therefore inadmissible. *Id.* at 1030.

Having reviewed Taquan Isaac's proferred testimony, we find no arguable merit in Isaac's claim of trial court error. As the trial court noted from Taquan's testimony, Fowler's statement to Taquon that "they took care

_____

[12] *See* N.T., 6/29/2009, at 973.

of that," was a "[p]retty broad statement." N.T., 6/30/2009, at 1028. Furthermore, although Isaac argued to the court following the proffer that Fowler was good friends with Taquon and would confide in him, Taquon's proffer did not specify his relationship with Fowler and explain why Fowler would admit to Taquon that he was culpable for the murder that had resulted in the conviction of Taquon's cousin, Isaac. *See Commonwealth v. Yarris*, 731 A.2d 581, 591–592 (Pa. 1999) (Rule 804(b)(3) corroborating circumstances lacking where the witness recalled only limited details of the declarant's alleged confession, did not know the alleged declarant very well, and could not explain why the declarant would offer a confession to her). Accordingly, this claim and the related ineffectiveness claim fail.

In the fourth issue, Isaac contends appellate counsel was ineffective for failing to challenge the trial court's evidentiary ruling that allowed the Commonwealth to introduce Isaac's statements to Lindsay Colon that he "persuasive[ly]" told her to "plead the fifth." Isaac's Brief at 65. Isaac contends Colon's testimony was irrelevant and no foundation was laid to establish its relevance. Specifically, Isaac argues that his statement to Colon was made in reference to his Federal case, in which she was also a witness. Isaac maintains the court's suggestion that he could cross-examine Colon on the relevance of the statement would force him to introduce his unrelated criminal record to the jury.

Here, on direct examination, Colon testified:

- 21 -

Q Again, Ms. Colon, during 2006 and 2007, did you have conversations with [Isaac] about you testifying against him?

A Yes.

Q And what did he say to you about that?

A That I could possibly plead the Fifth.

Q And how was he saying this to you?

A Just persuasive.

Q Was he trying to persuade you?

A Yes.

N.T., 6/24/2009, at 438. On cross examination, regarding this issue, Isaac asked Colon, "Did I tell you to plead the Fifth in this case," to which Colon responded "No." *Id.* at 483.

"[A]ny attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. Super. 2007). As the criminal complaint against Isaac was filed on April 11, 2006, the Commonwealth established a proper foundation by showing that the conversations occurred during 2006-2007, and relevancy by showing that the conversations involved Isaac's coaching Colon regarding her testifying against him. On this record, we conclude Isaac's argument that the trial court abused its discretion in admitting Isaac's statements encouraging Colon to "plead the Fifth" lacks arguable merit. Accordingly, Isaac's claim of appellate counsel's ineffectiveness warrants no relief.

In the fifth issue, Isaac contends appellate counsel was ineffective for failing to challenge on direct appeal the trial court's ruling that permitted the Commonwealth to impeach defense witness Michael Fowler with extrinsic evidence of an unsigned and unverified police statement. Isaac relies on **Commonwealth v. Simmons**, 622 A.2d 621 (Pa. 1995), stating:

> In **Simmons**, our Supreme Court declared: "A written report which is only a summary of the words of the victim and not verbatim notes from the victim cannot be used to impeach the victim on cross examination since it would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." **Id.** at 631[.]

Isaac's Brief at 68. Isaac maintains "[t]he trial court erred in permitting impeachment through Michael Fowler's alleged statement which was neither his statement, nor signed nor adopted by him. The purported statement was only a summary written after the fact by Detective Winters. It was not verbatim and not his statement." **Id.** at 68.

At trial, Isaac brought up Fowler's March, 2006, statement to police during his direct examination of Fowler. He asked Fowler if he recalled making a statement in March, 2006, to detectives. **See** N.T., 6/29/2009, at 928. Fowler answered, "No. I remember making a statement in [20]04." **Id.**

On cross-examination, the Commonwealth asked Fowler about his March, 2006 meeting with detectives. The following exchange occurred:

Q March 8th, 2006 you told detectives from Lancaster City Detectives that you went down to Coatsville on October 18th of 2004 in two cars; isn't that correct?

A. No.

Q. You told them that in one car was Prince Isaac, Shamek Hynson and yourself, correct?

A. No. I never been to Coatesville.

> MR. ISAAC: **Objection. At this time I ask Commonwealth produce the statement to show the defendant- - I mean, excuse me, the witness**.
>
> THE COURT: Fair enough.
>
> MR. BARRAZA: Certainly.
>
> THE COURT: Exhibit number please?
>
> MR. BARRAZA: This was marked number 94, Your Honor.

BY MR. BARRAZA:

Q. Mr. Fowler, is that the police report of the interview you had with Lancaster City detectives on March 8, 2006?

A. Yes, that's a police report.

Q. That's the date you met with Detective Switzer and Detective Winters; isn't that correct?

A. I'm not sure.

Q. But you did meet with them?

A. I did meet with them.

Q. Yes. And you spoke with them about the incidents of October 18, 2004; isn't that correct?

A. I'm not sure.

Q. And you told them that you went to Coatesville on October 18, 2004 in two vehicles; isn't that correct?

A. Never been to Coatesville.

Q. You told them that in one vehicle -- Prince Isaac, Shamek Hynson and Michael Fowler were in one vehicle; isn't that correct?

A. That's not correct.

Q. In the other vehicle was Lindsay, Shanika?

> MR. ISAAC: Your Honor, I object at this time. This is improper impeachment. Witness did not sign the statement. Witness says he doesn't recall. This is improper.

N.T. 6/29/2009, at 936–938 (emphasis added). Thereafter, the trial court permitted the Commonwealth to cross examine Fowler on the police statement.

We find no arguable merit in Isaac's claim. The fallacy of Isaac's argument is that the Commonwealth, in questioning Fowler about his prior inconsistent statement, did not attempt to introduce the police document to impeach him. *See* Pa.R.E. 613(a) ("A witness may be examined concerning a prior inconsistent statement made by a witness to impeach the witness's credibility."). Rather, the introduction of the extrinsic evidence of the police statement resulted from Isaac's request that the Commonwealth show Fowler the document during the Commonwealth's cross-examination of Fowler. Isaac himself opened the door to the Commonwealth's questioning Fowler in this context. Therefore, we conclude there is no arguable merit in

Isaac's claim of trial court error. It follows that his claim of appellate counsel's ineffectiveness fails.

In his penultimate issue, Isaac contends that appellate counsel was ineffective for failing to raise on direct appeal the claim that "the prosecutor committed misconduct by calling [Isaac] a 'player' and positing his guilt by association with the unrelated crimes of his witnesses." Isaac's Brief at 71.

When the issue of prosecutorial misconduct is raised on direct appeal,

> our inquiry "center[s] on whether the defendant was deprived of a fair trial, not deprived of a perfect trial." *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 231 (Pa. 1995) (citing *Commonwealth v. Holloway*, 524 Pa. 342, 572 A.2d 687, 693 (Pa. 1990)). It is well-settled that a "prosecutor must be free to present his or her arguments with logical force and vigor." *Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 306 (Pa. 2011). Comments grounded upon the evidence or reasonable inferences therefrom are not objectionable, nor are comments that constitute "oratorical flair." *Id*. at 307. Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. *Id*. Consequently, this Court has permitted vigorous prosecutorial advocacy provided that "there is a reasonable basis in the record for the [prosecutor's] comments." *Commonwealth v. Robinson*, 581 Pa. 154, 864 A.2d 460, 516-17 (Pa. 2004). A prosecutor's remarks do not constitute reversible error unless their unavoidable effect would prejudice the jurors, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308, 315 (Pa. 1995). Finally, we review the allegedly improper remarks in the context of the closing argument as a whole. *LaCava*, 666 A.2d at 235.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1109–1110 (Pa. 2012).

The first alleged instance of prosecutorial misconduct occurred during the closing when the prosecutor was discussing Isaac's testimony:

- 26 -

MR. CONTE: … We already know that Mr. Isaac is by his own admission a liar. This isn't me saying it. It's the defendant saying it. …

\*\*\*\*

He is not even honest in his personal life. He testified that he had I think if I can remember the number at least four girlfriends at least. That was –

MR. ISAAC: Objection, Your Honor. There was no testimony that I had four girlfriends.

MR. CONTE: Well, let's say four different women in at least two different states. I guess it is a question of semantics – girlfriends, women. You know what they call someone who has women everywhere? They call him a player. They call him a player.

MR. ISAAC: Objection, Your Honor. That's not in evidence.

THE COURT: It's argument, sir. Objection is overruled.

N.T., 7/1/2009, at 1358, 1362. The second alleged instance of prosecutorial misconduct occurred during the closing, as follows:

MR. CONTE: The defendant stood up here for most of his closing argument and did everything he could to assassinate the character of those witnesses. Who do you think witnesses in [a] case like this are going to be? Think about that. You think I'm going to parade a guidance counsellor, veterinarian, school teacher as witnesses? Are those the type of people that associated with the defendant?

*Id.*, at 1387.

Based on our review of the prosecutor's closing, we agree with the PCRA court that neither comment was improper. The "player" comment is plainly oratorical flair. In addition, the prosecutor's argument regarding the Commonwealth's witnesses who were associated with Isaac was fair

response to Isaac's closing argument attacking those witnesses. As such, this issue is lacking in arguable merit and cannot support an ineffectiveness claim.

Finally, Isaac claims that appellate counsel's cumulative errors in failing to raise all of the above claims resulted in prejudice. When post-conviction claims are rejected for lack of merit or arguable merit, no basis exists for an accumulation claim. ***Commonwealth v. Koehler***, 36 A.3d 121, 161 (Pa. 2012). "When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." ***Id.***

Although we remand for an evidentiary hearing on Isaac's first claim, he cannot ultimately prevail, *i.e.*, gain a new trial, on his accumulation claim. This is so because he has only one claim with merit or arguable merit. In this appeal, we have found that all other substantive claims of ineffective assistance lack arguable merit. Therefore, it is impossible for Isaac to show cumulative prejudice.

Based on the above, we affirm the PCRA court's order in part, and vacate in part, and remand for an evidentiary hearing as stated herein.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2016