J-S08042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASEAN MALONE | : | |
| | : | |
| Appellant | : | No. 1683 EDA 2018 |

Appeal from the PCRA Order May 2, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003070-2014

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED APRIL 16, 2019**

Appellant Rasean Malone appeals from the order of the Court of Common Pleas of Philadelphia County denying Appellant's petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

Appellant raises multiple claims of his trial counsel's ineffectiveness in his representation of Appellant against charges related to the murder of Tyrell Woodson and the attempted murder of Hakim Parker.  On July 1, 2013, shortly before 2 a.m., Woodson and Parker were walking on Chester Avenue in Philadelphia when a gray Hyundai Sonata pulled alongside of them.  After the vehicle's four occupants stared at Woodson and Parker for a moment, the vehicle pulled away.

Moments later, the Hyundai returned and cut directly in front of Woodson and Parker.  Only the driver of the Hyundai was in the vehicle; the

_____

* Former Justice specially assigned to the Superior Court.

three other occupants who had previously been in the vehicle approached Parker and Woodson on foot. The tallest of the three males pointed a revolver at Parker and Woodson, and threatened "[d]on't move or I'm going to blow your shit smooth off." Notes of Testimony (N.T.), 4/21/15, at 122; N.T, 4/22/15, at 87. Parker and Woodson retreated from the confrontation by sprinting in opposite directions. As Parker ran south on Chester Street towards his home, he heard multiple gunshots. Woodson chose to run north on Chester Street and was chased by the taller man with the firearm.

Within five minutes of the confrontation, officers responded to a radio dispatch and found Woodson lying on the ground with a gunshot wound to the head. Woodson was transported to the Hospital of the University of Pennsylvania where he died a short time later. Dr. Albert Chu of the Philadelphia Medical Examiner's Office testified that the manner of Woodson's death was homicide caused by a single gunshot wound to the back of his head. Officers obtained surveillance videos of parts of the confrontation.

On October 19, 2013, the police arrested Dasaahn McMillan for an unrelated weapons charge. Upon his arrest, McMillan indicated that he had information about Woodson's murder; at the time of the murder, McMillan lived with his paramour, Sheronda Miller, and her daughter, Raven Williams, who was dating Appellant (also known as "Shizz"). N.T., 4/22/15, at 78. McMillan indicated that near the time of Woodson's murder, Appellant bragged that he had "jumped out on somebody" a few nights earlier and had

threatened the individual to "give that shit up or I'm going to blow your head smooth off." N.T., 4/22/15, at 87.

McMillan subsequently talked to Parker, who McMillan also knew. Parker, in giving his account of the night Woodson was murdered, indicated that one of the males had threatened "give that shit up or I'm gonna blow y'all head smooth off." N.T., 4/22/15, at 87. Noticing this phrase was similar to the one that Appellant made in his attack, McMillan asked if Parker recognized any of his assailants. Parker noted that one of the males was short and had distinctive pimples with a bumpy face. At that point, McMillan realized that Parker was describing Appellant.

Thereafter, Appellant told McMillan to tell "young boy [referring to Parker] to keep my name out of his mouth. I'm going to blow his shit off." N.T., 4/22/15, at 91. Appellant then admitted to McMillan that he jumped out on Parker and Woodson "just to rob them because he had got some bad dope." N.T., 4/22/15, at 103. McMillan clarified that when Appellant had "bad dope," his "money slowed up. [Appellant] needed money [as] he got two daughters. I'm pretty sure he had to buy Pampers and food." N.T., 4/22/15, at 103.

Parker subsequently identified Appellant in a photo array, indicated that Appellant was directly in front of him right before the shooting, and confirmed this identification at Appellant's preliminary hearing. Parker also identified Appellant in still photographs taken from a surveillance video that captured part of the confrontation. In the video, the person whom Parker identified as

Appellant can be seen pulling out a gun and firing it. The video shows two muzzle flashes and smoke coming from the firearm.

Appellant was charged with murder, attempted murder, robbery, and conspiracy to commit murder, conspiracy to commit robbery, carrying a firearm in public in Philadelphia, and possessing an instrument of crime. Appellant proceeded to a jury trial, but was not tried with any of his alleged co-conspirators.

At the time of Appellant's trial, William Harrison had also been arrested and charged in connection with Woodson's murder. Five days after the shooting, Harrison, while incarcerated on an unrelated matter, participated in a three-way call with his girlfriend, Patricia Myers and Mitchell Spencer; this call was recorded by the prison. During the conversation, Spencer handed the phone to an individual named "Shizz." Harrison asked Shizz, "What's up with that --- car? You ever off that car?" N.T., 4/23/15, at 74. Shizz responded, "Fuck no. We in that shit right now." N.T., 4/23/15, at 74.

At trial, Parker denied remembering giving his statement to the police identifying Appellant as one of his assailants in the photo array. When Parker was shown the photo array at trial, he claimed that Appellant was not his first choice. However, Parker did admit that the signature and date on the photo array next to his identification of Appellant was in his handwriting.

On April 27, 2015, a jury convicted Appellant of second-degree murder, conspiracy to commit murder, attempted murder, robbery, conspiracy to commit robbery, carrying a firearm in public in Philadelphia, and possessing

an instrument of crime. The trial court sentenced Appellant to life imprisonment without parole for the murder charge as well as an aggregate term of ten to twenty years' imprisonment for the remaining charges.

On February 18, 2016, this Court affirmed in part but vacated Appellant's sentence, finding Appellant's consecutive sentences for second-degree murder and robbery violated the Double Jeopardy Clause of the U.S. Constitution. The trial court resentenced Appellant to life imprisonment without parole for the murder charge and a concurrent aggregate term of fifteen to thirty years' incarceration on the other convictions. On August 25, 2016, our Supreme Court denied Appellant's petition for allowance of appeal.

On June 19, 2017, Appellant filed the instant PCRA petition. The PCRA court appointed counsel, who filed an amended petition on Appellant's behalf. On May 2, 2018, after an evidentiary hearing, the PCRA court denied Appellant's petition. This timely appeal followed.

Appellant raises the following issues for our review:

I.  Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when trial Counsel ineffectively failed to interview, subpoena, and call a critical alibi witness?

II. Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when trial Counsel ineffectively failed to obtain Appellant's medical records and have Appellant examined by an expert who would then have been able to testify that it would be unlikely that Appellant would have been physically able to run and chase after the victim as the suspect did in the video?

III. Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when trial Counsel ineffectively failed to object to the Commonwealth's introduction of evidence of an unrelated crime to establish guilt by association?

IV. Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when trial Counsel ineffectively failed to negotiate, timely communicate and reasonably explain the pros and cons of a plea offer making Appellant's rejection of the offer unknowing and unintelligent?

V. Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when trial Counsel ineffectively failed to develop and use evidence to impeach McMillan?

VI. Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when trial Counsel ineffectively argued that the jury should apply an unconstitutional reasonable doubt standard?

VII. Did the cumulative impact of the multiple violations of Appellant's Sixth Amendment right to effective assistance of Counsel deprive[] Appellant of his right to a fair trial and due process under the 6th and 14th Amendments?

Appellant's Brief, at 3-4 (reordered for ease of review).

Our standard of review is as follows:

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a de novo standard.

*Commonwealth v. Johnson*, 635 Pa. 665, 690, 139 A.3d 1257, 1272 (2016) (quotation marks and quotations omitted). To be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one of the enumerated circumstances found in 42 Pa.C.S.A. § 9543(a)(2). These circumstances include the "[i]neffective assistance of counsel, which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

In reviewing a claim of the ineffectiveness of counsel, we are guided by the following principles:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

*Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa.Super. 2018) (quoting *Commonwealth v. Natividad*, 595 Pa. 188, 207–208, 938 A.2d 310, 321 (2007)).

- 7 -

First, Appellant argues that trial counsel was ineffective in failing to call alibi witness Jamarr Williams ("Jamarr"). "In order to demonstrate counsel's ineffectiveness for failure to call a witness, a petitioner must prove that "the witness existed, the witness was ready and willing to testify, and the absence of the witness' testimony prejudiced petitioner and denied him a fair trial." ***Commonwealth v. Stahley***, \_\_\_A.3d\_\_\_, 2018 Pa.Super. 346 (Dec. 19, 2018) (quoting ***Commonwealth v. Luster***, 71 A.3d 1029, 1047 (Pa.Super. 2013) (citations omitted)).

Appellant asserts that Jamarr would have given key alibi testimony that would have supported and strengthened similar testimony given by Raven Williams ("Raven"), Appellant's girlfriend at the time of the victim's murder.[1] A review of the specific factual background relevant to this issue is necessary to explain Appellant's allegations and analyze this claim.

At trial, counsel filed an untimely alibi notice listing Jamarr and Raven as witnesses and the Commonwealth did not object. During its case-in-chief, the Commonwealth called Raven as a prosecution witness; she testified that in the time period near the victim's murder, she required Appellant to be home with her every night by 12 a.m. Raven claimed that because her pregnancy with Appellant's child was considered high-risk, she could have gone into labor at any time. Thus, Raven suggested that Appellant could not have participated

---

[1] Jamarr Williams testified that he is not related to Raven Williams. N.T. PCRA Hearing, 5/2/18, at 62.

in the robbery and murder of Woodson which occurred just before 2 a.m. on July 1, 2013.

In response, the prosecution confronted Raven with cell phone records showing a flurry of phone calls between her phone, Appellant's phone, and alleged co-conspirator William Harrison's phone on the night of the murder. The prosecutor questioned why there were so many calls between Raven and Appellant's phones at that time if they were together. Raven claimed Appellant shared his phone with Jamarr and speculated that Appellant could have been with her and using her phone to call Jamarr that night.

The prosecutor recognized Jamarr in the courtroom from Appellant's social media posts and alerted the court crier that Jamarr was on Appellant's alibi notice. Both the court crier and the trial court repeatedly called out Jamarr's name as the trial court had ordered the sequestration of witnesses. Jamarr did not respond, but left the courtroom without acknowledging that he had been summoned by the court.

After the prosecution rested their case, counsel indicated Appellant would not present any evidence in his own defense. The trial court conducted an oral colloquy to ensure Appellant understood this choice. The trial court specifically asked if Appellant wanted to call any witnesses:

> THE COURT: And then I do know – just focus on me for a second because I do know that you had some alibi witnesses listed, and I also know that [Counsel] had an opportunity to elicit some testimony from one of the witnesses without having to call her as your witness.

Now, there were several other names provided on that alibi notice. [Counsel], as I understand it, you're not withdrawing he alibi, that you're going to ask me for an alibi charge.

[COUNSEL:] Exactly.

THE COURT: I just need to make sure, [Appellant], that you agree that you should not call any witnesses as it pertains to that alibi defense.
Do you agree?

[APPELLANT:] I agree.

THE COURT: I know you had one man here who ignored the court officer's instructions or refused to identify himself but did leave the room, and he could be – although I'm not certain if he's in the room now, again.
Did he ever come back, [counsel]?

[COUNSEL:] Yes, he is.

THE COURT: And he, I think, was in here again yesterday.

[COUNSEL:] Yes, he was. I told him I wasn't going to call him.

THE COURT: We pointed out if he was going to testify, he needed to stay out of the room, but I gather you already made that decision that you were not going to present him; is that correct?

[COUNSEL:] Yes, your Honor.

THE COURT: [Appellant], were there any witnesses that you want your attorney to call that he has not discussed with you the pros and cons of calling?

[APPELLANT:] No.

THE COURT: And do you have any witnesses that you want to present? In other words, are you disagreeing with any of [counsel's] strategy?

[APPELLANT:] No.

N.T. 4/23/15, at 165-67.

- 10 -

As an initial matter, we observe that Appellant has waived this ineffectiveness claim. "[A] defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision." *Commonwealth v. Brown*, ___Pa.___, 196 A.3d 130, 174 (2018) (quoting *Commonwealth v. Paddy*, 569 Pa. 47, 82, 800 A.2d 294, 316 (2002)). In *Paddy*, the Supreme Court found that a similar ineffectiveness claim failed for the "fundamental reason that Paddy agreed at trial to counsel's decision not to call the [alibi] witnesses in question." *Paddy*, 569 Pa. at 82, 800 A.2d at 315. Likewise, as the aforementioned colloquy shows Appellant clearly and unequivocally agreed with counsel's strategy to rest the case without presenting any evidence, Appellant cannot now claim counsel was ineffective in failing to call an alibi witness.

Moreover, the PCRA court found Jamarr was not a credible witness and merely offered testimony cumulative to the alibi presented by Raven Williams. At the PCRA hearing, Jamarr testified that he and Appellant were good friends and traveled throughout the city in Jamarr's vehicle in the summer of 2013. Jamarr claimed that he and Appellant shared a cell phone at that time and at the end of each day, Appellant drove himself to Raven's house in Jamarr's vehicle and gave Jamarr the shared cell phone. Jamarr indicated that he would drop Appellant off at Raven's home like "clockwork" each night and claimed he would be available to chauffer Appellant around if Appellant called

the shared phone from Raven's phone. However, Jamarr also claimed that he would hide the cell phone in his car until the next morning.

The PCRA court reasoned that the basis of Jamarr's story "did not make sense," as Jamarr was supposed to make himself available to pick up Appellant at a moment's notice but at the same time Jamarr admitted hiding the phone in his car. Trial Court Opinion, 6/18/18, at 15. In addition, the PCRA court pointed out that Jamarr could not remember key details from the night in question, specifically that there was a high volume of phone calls from Raven's phone to the shared phone on the night of the victim's murder. Accordingly, this ineffectiveness claim has no arguable merit.

Second, Appellant argues that counsel was ineffective in failing to obtain Appellant's medical records to show that Appellant's mobility was limited by a prior gunshot wound. Further, Appellant asserts that counsel should have had Appellant examined by an expert who would have testified that it would be unlikely that Appellant would have been physically able to run and chase after the victim as the suspect did in the surveillance video. In support of this argument, Appellant presents a physician's report that states that the physician was "not able to state within a reasonable degree of medical certainty what, if any, physical limitations were present at the time of the 2013 incident." Report of David L. Glaser, M.D., 11/19/17.

In addition to the general principles set forth in **Stahley**, **supra**, that govern claims of counsel's ineffectiveness for the failure to call a witness, we note the following:

"[w]hen a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence." **Commonwealth v. Williams**, 537 Pa. 1, 29, 640 A.2d 1251, 1265 (1994) citing **Commonwealth v. Holloway**, 524 Pa. 342, 572 A.2d 687 (1990). This is consistent with our Supreme Court's previous mandate that to justify an evidentiary hearing with respect to assertions of ineffectiveness of trial counsel, it is required that an offer of proof be made that alleges sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective. **Commonwealth v. Durst**, 522 Pa. 2, 5, 559 A.2d 504, 505 (1989). Claims of ineffectiveness of trial counsel cannot be considered in a vacuum. **Id**.

**Commonwealth v. Steward**, 775 A.2d 819, 831-832 (Pa.Super. 2001).

Moreover, "[t]he mere failure to obtain an expert witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause." **Id**. at 832 (citation omitted).

In this case, Appellant does not indicate that he has an expert available to testify in support of his assertion that he was physically incapable of chasing and murdering the victim; this theory is based on pure speculation. As such, Appellant failed to demonstrate that this particular claim of trial counsel's ineffectiveness is of arguable merit.

Third, Appellant claims trial counsel was ineffective in failing to object to specific testimony from Officer George Gee. Appellant was the first individual charged with Woodson's murder, followed by the arrest of William Harrison, who was charged as one of Appellant's co-conspirators in the murder; Appellant and Harrison were not tried jointly. The Commonwealth

sought to admit evidence as part of their case showing that the two men were connected and conspired to commit Woodson's murder.

After Woodson's murder occurred in the early morning hours of July 1, 2013, police received flash information about a suspect who had committed a robbery in the same neighborhood around 7 p.m. that same day.[2] The officers' investigation led them to a home where they observed multiple men congregating on a front porch, including Appellant and Harrison. One of the men on the porch matched the description of the robbery suspect given in the flash information.

As the officers approached, all the men fled into the home. Officers entered the home and found the males hiding in various places in the home. The officers subsequently arrested Harrison in connection with the robbery and released all the other individuals that were present at the time, including Appellant.

Appellant argues that trial counsel was ineffective in consenting to the introduction of this evidence, claiming it was inadmissible as a prior bad act. Appellant asserts that this evidence was improperly admitted to establish his guilt by association with Harrison, who was arrested for another crime as well as Woodson's murder. We disagree.

---

[2] "A flash information is based on a report from the initial officers to investigate the scene of a crime and is broadcast to other police units in the district." *Commonwealth v. Jackson*, 519 A.2d 427, 431 (Pa.Super. 1986).

At trial, the prosecution limited the officer's testimony to show Appellant fled and concealed himself upon the sight of police officers within twenty-four hours of Woodson's murder. The prosecution did not elicit any testimony about the fact that Harrison, Appellant's co-conspirator, was arrested for an additional, unrelated robbery. To the contrary, the Commonwealth offered this evidence to (1) connect Appellant and Harrison who were alleged to be co-conspirators and (2) to support an inference that Appellant fled and hid from police due to consciousness of guilt. Our Supreme Court has held that "[e]vidence of a defendant's flight and/or concealment following a crime is admissible to establish an inference of consciousness of guilt." *Commonwealth v. Spotz*, 582 Pa. 207, 213, 870 A.2d 822, 825 n.10 (2005).

Moreover, we note that the trial court gave a proper limiting instruction to advise the jury on how to properly consider this evidence:

> Whether evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight or concealment.

N.T. 4/24/15, at 19. We also note that the jury was repeatedly informed that this incident in which Harrison was arrested was unrelated to Woodson's murder. As a result, as Appellant's underlying claim lacks arguable merit, we cannot find counsel ineffective in failing to raise a meritless claim. *Commonwealth v. Staton*, 632 Pa. 400, 412, 120 A.3d 277, 284 (2015).

Fourth, Appellant contends counsel ineffectively failed to properly advise him on the Commonwealth's offer on the morning of trial to allow Appellant

to plead to third-degree murder in exchange for a negotiated sentence of 27 to 55 years' imprisonment. It is well established that:

> a post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate the following circumstance:
>
>> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

**Commonwealth v. Steckley**, 128 A.3d 826, 832 (Pa.Super. 2015) (quoting **Lafler v. Cooper**, 566 U.S. 156, 164, 132 S.Ct. 1376, 1385 (2012)).

In this case, the PCRA court found Appellant was not credible in claiming that he would have entered a guilty plea but for counsel's ineffectiveness. Rather, the trial court emphasized that Appellant's decision to proceed to trial was a reflection of Appellant's claim of innocence and the fact that he was convinced he would receive a favorable jury verdict.

The PCRA court found trial counsel credibly testified that, throughout pre-trial plea negotiations, Appellant remained resolute that he would not accept any plea offer and refused to cooperate with the prosecution to testify against his alleged co-conspirators. As the record supports the PCRA court's credibility determinations, they are binding on this Court. **See Johnson**, **supra**. Accordingly, we agree with the PCRA court's conclusion that Appellant

has not demonstrated that counsel rendered ineffective assistance with respect to the guilty plea.

Fifth, Appellant asserts that counsel ineffectively failed to develop and use evidence to impeach McMillan whose testimony was key to the prosecution as he essentially claimed that Appellant had confessed to the victim's murder. Appellant asserts that counsel should have investigated McMillan's background, which would have called into doubt McMillan's claim that he knew Appellant from the neighborhood since the age of thirteen. While Appellant grew up in West Philadelphia, he claims McMillan lived miles away in Southwest Philadelphia at the time of the victim's murder. Appellant asserts that introducing this evidence would show the jury that McMillan lied about knowing Appellant from his neighborhood and would have then rejected the rest of his testimony.

We fail to see how Appellant's notation of McMillan's most recent addresses disproves McMillan's testimony that he met Appellant in his neighborhood when he was thirteen years old; Appellant did not provide any evidence showing where McMillan lived when he was thirteen. Moreover, even if Appellant provided proper evidence verifying this fact, Appellant has not shown prejudice as the minimal impeachment value of this evidence would not likely impact the jury's credibility determination. *See Commonwealth v. Hanible*, 612 Pa. 183, 231, 30 A.3d 426, 455 (2011) (holding that "[t]rial counsel cannot be deemed to have provided constitutionally deficient representation based on his failure to elicit such a minor point on cross-

examination"); *Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711, 734 (1998) (finding trial counsel was not ineffective for failing to impeach a witness with a minor inconsistency). As a result, we reject this ineffectiveness claim.

Sixth, Appellant claims trial counsel ineffectively used an improper hypothetical in closing argument to relate the reasonable doubt standard to making decisions in a medical emergency with one's child. Specifically, Appellant cites to *Brooks v. Gilmore*, 2017 WL 3475475 (E.D.Pa. 2017), in which a federal district court found a trial court's reasonable doubt instruction with similar language improperly elevated the level of doubt necessary to secure an acquittal. We note that we are not bound by decisions of federal courts other than the Supreme Court of the United States. *Commonwealth v. Green*, ___A.3d___, 2019 PA Super 39 (Feb. 12, 2019) (citing *Commonwealth v. Orie*, 88 A.3d 983, 1009 (Pa.Super. 2014)).

We recognize that "[w]hile counsel is permitted to discuss the applicable law as it pertains to the evidence presented, it is improper for counsel to misstate the law or to state it in such a manner so as to confuse the jury." *Commonwealth v. Jones*, 546 Pa. 161, 204, 683 A.2d 1181, 1202 (1996). However, regardless of whether counsel misstated the law in closing argument, Appellant's claim still fails as he did not show counsel's statement resulted in prejudice to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

Any prejudice from counsel's remarks was adequately cured by the trial court's correct instructions on reasonable doubt. *See id*. (finding prejudice

resulting from prosecutor's impermissible remark was cured by the trial court's instructions).  It is well established that "[t]he law presumes that the jury will follow the instructions of the court."  ***Commonwealth v. Patterson***, 180 A.3d 1217, 1228 (Pa.Super. 2018).  Thus, this ineffectiveness claim fails.

Lastly, Appellant claims the cumulative impact of his various allegations of ineffectiveness deprived him of his right to a fair trial and due process.

> It is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. ***Commonwealth v. Johnson***, 600 Pa. 329, 966 A.2d 523, 532 (2009). Accordingly, where ineffectiveness claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. ***Commonwealth v. Sattazahn***, 597 Pa. 648, 952 A.2d 640, 671 (2008). "When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." ***Commonwealth v. Koehler***, 614 Pa. 159, 36 A.3d 121, 161 (2012) (citations omitted).

***Commonwealth v. Smith***, 181 A.3d 1168, 1187 (Pa.Super. 2018), *appeal denied*, 193 A.3d 344 (Pa. 2018).

In this case, when reviewing Appellant's ineffectiveness claims that did not prejudice Appellant individually, we find that the claims do not prejudice him when considered in the aggregate.

Accordingly, for the foregoing reasons, we affirm the order of the PCRA court dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/16/19